2001 SD 7

**ARNOLD MURRAY CONSTRUCTION, L.L.C., Plaintiff and Appellee,**

v.

**Eugene HICKS, Defendant and Appellant.**

No. 21418.

Supreme Court of South Dakota.

Considered on Briefs Nov. 27, 2000.

Decided Jan. 10, 2001.

172

David Alan Palmer, Sioux Falls, SD, Attorneys for plaintiff and appellee.

Douglas P. Cummings Jr., East River Legal Services, Sioux Falls, SD, Attorney for defendant and appellant.

GILBERTSON, Justice

[¶ 1.] Arnold Murray Construction, L.L.C. sued Eugene Hicks for possession of his apartment pursuant to SDCL 21–16–1, alleging that he had been disturbing his neighbors, violating parking rules and blocking open the security door. Hicks claimed that he was entitled to reasonable accommodations under the Fair Housing Act Amendments because he was disabled. The trial court ordered Hicks to surrender possession of the apartment. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] Arnold Murray Construction, L.L.C. (AMC) owns and operates an eighteen unit residential apartment complex at 615½ West 11th Street in Sioux Falls, South Dakota. Eugene Hicks (Hicks) was being evicted from a former residence. His attorney, Doug Cummings, contacted AMC and was able to arrange an apartment rental for Hicks with AMC. On September 28, 1999, AMC entered into a written lease agreement with Hicks and Sioux Falls Housing and Redevelopment Commission (Commission). Under this lease, the Commission provided rent subsidies to AMC on behalf of Hicks. The lease is based upon regulations promulgated by the United States Department of Housing and Urban Development (HUD), and prohibits discrimination on the basis of disability. Hicks suffered a brain injury twenty-three years ago, the result of which

has left him disabled for purposes of this appeal.[1]

[¶ 3.] Hicks became a center of controversy shortly after moving into his apartment. He refused to follow the parking rules of the complex. These rules stated that tenants were required to park in their garages, as the parking lot was for use only by guests and maintenance people. Hicks repeatedly violated these rules, claiming that the effects of his brain injury made it difficult for him to get out of his car after parking it in his single stall garage.[2] For that reason, Hicks frequently parked his car in the parking lot. Hicks also repeatedly blocked open the security door. Because of his hand tremors, he claimed it was difficult to unlock the security door. AMC also received complaints from female tenants that Hicks had hung a sign in his window that read, "loose women tightened here."

[¶ 4.] In addition, on numerous occasions Hicks engaged in direct abusive and threatening behavior toward fellow tenants. Joe Foster, the building manager, had received a complaint that Hicks was beating on his ceiling. When he confronted Hicks regarding his behavior, Hicks became belligerent, yelled profanities at Foster and waved his arms in a hostile manner. A neighbor of Hicks, Lois Wysolovsky testified that Hicks continually stared at her, has screamed at her, and on one occasion, stood in his doorway completely naked in her presence. Another neighbor, Pam Schar, testified that Hicks often gave her undue unwanted attention and had previously stared at her from behind bushes located near the apartment building. Hicks also verbally abused Bonnie Murray, a partner of AMC, when she confronted him regarding a violation of the parking rules. These occurrences caused the witnesses to feel threatened and fearful for their safety.

[¶ 5.] AMC issued a notice to vacate and quit to Hicks, alleging that he was not following the parking rules, was blocking open the security doors, was peeking out the windows while unclothed and was disturbing the neighbors. After Hicks failed to surrender the apartment, AMC initiated eviction proceedings pursuant to SDCL 21-16-1. As a defense to the eviction action, Hicks asserted that because he was handicapped, he was entitled to reasonable accommodation of his handicap under the Fair Housing Amendments Act (FHAA), before he could be evicted. *See* 42 U.S.C.A. § 3604 (West 1994). AMC claimed that Hicks was not entitled to reasonable accommodation because he posed a direct threat to the health and safety of other individuals. *See Id.* § 3604(f)(9).

[¶ 6.] The trial court determined that Hicks was indeed disabled under the FHAA. Based upon the testimony received at trial, the trial court found that Hicks posed a direct threat to the health and safety of the other tenants in AMC's apartment complex. The trial court also determined that because AMC had shown that no reasonable accommodation would eliminate or acceptably diminish the risk Hicks posed, AMC was not required to show that a reasonable accommodation had been made. For those reasons, Hicks was ordered to surrender possession of the apartment. That order was stayed by this Court, pending the resolution of this appeal. Hicks now appeals, raising two issues which merit our consideration:

---

1. Hicks suffers from slurred speech, double vision, hand tremors, poor balance when walking, and uncontrollable emotional outbursts. The trial court determined that these effects qualified Hicks as disabled under the Fair Housing Amendments Act, 42 U.S.C. § 3602(h). That classification has not been appealed by AMC.

2. There was also testimony that Hicks' difficulty in maneuvering in his garage was due to the large number of boxes stored in the garage, rather than complications of his disability.

1. Whether AMC was required to reasonably accommodate Hicks' handicap.
2. Whether Hicks was given adequate notice of the grounds for his eviction.

## STANDARD OF REVIEW

■ We review the circuit court's findings of fact under the clearly erroneous standard. "Clear error is shown only when, after a review of all the evidence, 'we are left with a definite and firm conviction that a mistake has been made.'" "The trial court's findings of fact are presumed correct and we defer to those findings unless the evidence clearly preponderates against them." Conclusions of law are reviewed under a de novo standard, giving no deference to the circuit court's conclusions of law. *City of Deadwood v. Summit, Inc.*, 2000 SD 29, ¶ 9, 607 N.W.2d 22, 25 (internal citations omitted).

## ANALYSIS AND DECISION

[¶ 7.] **1. Whether AMC was required to reasonably accommodate Hicks' handicap.**

[¶ 8.] Hicks claims that he is entitled to protection under the FHAA, which extends to landlords, such as AMC, that accept federal rent subsidies. The FHAA provides, in relevant part, that it is unlawful

> To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of: (A) that buyer or renter....
>
> To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of: (A) that person....

42 U.S.C.A. § 3604(f)(1), (2). Under the FHAA, discrimination includes "a refusal to make reasonable accommodations in the rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling...." *Id.* § 3604(f)(3)(B). However, "[n]othing in [42 U.S.C.A § 3604(f) ] requires that a dwelling be made available to an individual whose tenancy would constitute a direct threat to the health or safety of other individuals...." *Id.* § 3604(f)(9). The trial court determined that when a handicapped tenant poses a threat to the health and safety of the other tenants, and the landlord can show that no reasonable accommodation will eliminate or acceptably diminish the risk posed by the handicapped tenant, then the landlord is not required to actually attempt reasonable accommodations.

■ [¶ 9.] Hicks argues on appeal that AMC must first attempt reasonable accommodations to alleviate his handicap before it may terminate his lease. We disagree with Hicks' assertion.

[¶ 10.] This issue requires us to determine when a landlord's duty to provide accommodations arises. To aid our determination, we will examine the legislative history of the FHAA and relevant case law. The purpose of the FHAA is "to end the unnecessary exclusion of persons with handicaps from the American mainstream" by mandating that persons with handicaps be considered as individuals, rather than under a cloud of unfounded speculation and generalized misperceptions. H.R. Rep. No. 100–711, 18 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2173, 2179. To alleviate concerns that landlords would be forced to rent to handicapped individuals who may be violent, section 3604(f)(9) was enacted. *Id.* at 2189. When adopting this provision, Congress incorporated the case law that had developed under the Rehabilitation Act of 1973, section 504 (codified at 29 U.S.C.A. § 794 (1999)). *Id.* Specifically, the standard announced in *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 287, 107 S.Ct. 1123, 94 L.Ed.2d 307 n.16,

480 U.S. 273, 107 S.Ct. 1123, 1131, 94 L.Ed.2d 307 n.16, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307, 320 n.16 (1987) was endorsed. In *Arline,* the Court stated that an employee with a contagious disease that posed a significant risk to the health of others in the workplace is entitled to reasonable accommodations if those accommodations will eliminate the risk to others. *Id.* The House Judiciary Committee stated as follows:

> Thus, the direct threat requirement incorporates the *Arline* standard, and a dwelling need not be made available to an individual whose tenancy can be shown to constitute a direct threat and a significant risk of harm to the health or safety of others. *If a reasonable accommodation could eliminate the risk, entities covered under this Act are required to engage in such accommodation* pursuant to [42 U.S.C.A. § 3604(f)(3)].

1988 U.S.C.C.A.N. at 2190 (emphasis added).

[¶ 11.] The federal district court of New Hampshire dealt with the application of 42 U.S.C.A. § 3604(f)(9) in *Roe v. Sugar River Mills Associates,* 820 F.Supp. 636 (1993). In that case, Roe accosted another tenant using obscene and offensive language, causing the tenant to fear for his safety. For that incident, Roe was convicted of disorderly conduct. When Sugar River attempted to evict Roe, he claimed that he was entitled to reasonable accommodations for his mental handicap. Sugar River claimed that because Roe was a direct threat to the health and safety of other tenants, it was not obligated to offer reasonable accommodations. The district court held that Sugar River was required to show that no reasonable accommodation would eliminate or acceptably minimize the risk that Roe posed to the other tenants before it could evict him. *Id.* at 640.

[¶ 12.] In *Roe v. Housing Authority of City of Boulder,* 909 F.Supp. 814 (D.Colo. 1995), Roe suffered from manic-depressive disorder, also known as bipolar disorder, and hearing impairment. Roe was also abusive and threatening to fellow tenants, which brought about his eviction notice. The district court adopted the reasoning of the *Sugar River* court, finding that "assuming Roe is handicapped or disabled, before he may lawfully be evicted [the Housing Authority] must demonstrate that no 'reasonable accommodation' will eliminate or acceptably minimize any risk Roe poses to other residents...." *Id.* at 822–23. *But see Stout v. Kokomo Manor Apartments,* 677 N.E.2d 1060, 1065 (Ind. App.1997) (finding that reasonable accommodations not required when tenant's son molested another tenant's child).

[¶ 13.] Based upon the legislative history of the FHAA and its inclusion of the *Arline* standard, we agree with the two *Roe* decisions that Congress intended for landlords to attempt reasonable accommodations, even when the tenant is a direct threat to the health and safety of other tenants, if those accommodations will eliminate or acceptably minimize the risks posed by that tenant. However, we do not believe that Congress intended accommodations to be attempted or implemented if there is no reasonable expectation that the accommodation will protect the other tenants. Therefore, if a handicapped tenant is a direct threat to the health and safety of other tenants, the landlord is obligated to either reasonably accommodate the tenant's handicap or show that no reasonable accommodation will eliminate or acceptably minimize the risk posed by the handicapped tenant. When the landlord shows that no reasonable accommodation will curtail the risk, its duty to accommodate ceases. As the trial court in this matter noted, to require an "automatic attempt to accommodate a dangerous tenant would needlessly place other residents in the tenant's building at risk." This determination effectively balances the Congressional policy of including handicapped Americans in mainstream society against the need to protect the neighbors of dangerous tenants.

[¶ 14.] In the present action, the trial court determined that Hicks posed a direct threat to the health and safety of the other tenants. After reviewing the record, we cannot say that its determination was clearly erroneous. The trial court also found AMC had shown that no reasonable accommodations would diminish the risk posed by Hicks. AMC's property manager, Bonnie Murray, who has extensive experience with handicapped tenants and the special challenges they present, testified that she did not believe any reasonable accommodation would reduce the risks posed by Hicks. Hicks introduced testimony regarding accommodations he desired to deal with his parking and controlled access door issues. However, he made no mention of any accommodations that would minimize the threat he posed to the other tenants in his building due to his emotional outbursts, verbal threats, nude appearance and other offensive conduct. Under the *de novo* standard, we agree with the trial court that AMC established that no reasonable accommodation would curb the threat Hicks poses.[3]

[¶ 15.] **2. Whether Hicks was given adequate notice of the grounds for his eviction.**

■ [¶ 16.] Hicks claims that because AMC receives Federal housing benefits through HUD, it must follow the procedures set forth in 24 C.F.R. § 982.310. That section requires that "[t]he owner must give the tenant a written notice that specifies the grounds for termination of tenancy during the term of the lease." *Id.* § 982.310(e)(1)(i). Hicks claims he was not given adequate notice of the grounds for his eviction because neither the notice to vacate and quit, nor AMC's complaint specifically alleged that Hicks was a threat to the health and safety of other tenants. The Notice given to Hicks stated four

grounds for eviction: 1) not following the parking rules; 2) unsecuring the controlled access doors; 3) peeking out his windows while unclothed and with lewd notes; and 4) disturbing the neighbors. AMC's complaint alleged that Hicks had created a hazard and nuisance to the other residents of the building when he refused to follow the parking rules, unsecured the controlled access doors, and shouted lewd remarks out of his windows. Hicks claims that he was not properly notified that his behavior was a threat to the health and safety of the other tenants, therefore he was denied his right to due process.

[¶ 17.] We addressed a similar claim in *S.B. Partnership v. Gogue*, 1997 SD 41, 562 N.W.2d 754. In that case, S.B. Partnership (S.B.) sent two letters and a notice to vacate to its tenant, Gogue. In those notices, S.B. failed to specify the reasons for the termination. As a defense to the subsequent eviction action, Gogue claimed that she received insufficient notice of the reasons for her eviction. We concluded that "[w]hile it would have been better practice for [S.B.] to include reasons for termination in its notices to Gogue in the first instance, due process requires only reasonable notice and an opportunity to be heard at a 'meaningful time and in a meaningful manner.'" *Id.* ¶ 16, 562 N.W.2d at 758–59. We then determined that Gogue had been given that opportunity through the state court eviction proceedings. *Id.* at 759.

[¶ 18.] Like Gogue, Hicks was given reasonable notice and an opportunity to be heard, sufficient to satisfy due process. The notices specified that his lease was being terminated for the specific conduct referred to therein. It was these actions upon which the trial court, in large part, based its decision. The issue of whether

---

**3.** Hicks also raises the additional legal issue that he cannot be evicted unless his conduct also amounts to criminal activity. 24 C.F.R. § 982.310(c). As the conduct of Hicks clearly amounts to the criminal activity of disorderly

conduct, SDCL 22–13–1(1), we need not address the underlying legal issue until such time as the relevant conduct does not rise to that of criminal activity and thus presents a tenant with a potential defense to eviction.

or not the specified acts constituted a threat to the health and safety of other tenants was the landlord's burden of proof, not a specific additional factual allegation.

[¶ 19.] Hicks was given time to obtain counsel. He was able to effectively cross-examine all of AMC's witnesses at trial. In addition, Hicks has not alerted us to any remedy that he has lost due to the allegedly insufficient notice. He was entitled to reasonable notice and "an opportunity to be heard at a 'meaningful time and in a meaningful manner.'" *Id.* That is precisely what he received.

[¶ 20.] The judgment is affirmed.

[¶ 21.] MILLER, Chief Justice, and SABERS, AMUNDSON, and KONENKAMP, Justices, concur.