2001 SD 83

**Lonny C. PARMELY and Jeanny E. Parmely, Plaintiffs and Appellants,**

v.

**Tom HILDEBRAND and Glenda Hildebrand, Defendants and Appellees.**

No. 21630.

Supreme Court of South Dakota.

Argued April 26, 2001.

Decided June 27, 2001.

Courtney R. Clayborne of Johnson, Eiesland, Huffman & Clayborne, Rapid City, SD, Attorneys for plaintiffs and appellants.

Gregory J. Erlandson, Rodney W. Schlauger of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, SD, Attorneys for defendants and appellees.

GILBERTSON, Justice.

[¶ 1.] Lonny and Jeanny Parmely (Parmelys) purchased a house and adjoining real estate from Tom and Glenda Hildebrand (Hildebrands). Prior to the sale, Hildebrands completed a property disclosure statement as required by SDCL 43–4–38, which disclosed various problems with the property. Parmelys later sued Hildebrands claiming inadequate disclosure of defects to the house. The trial court found for Hildebrands and we affirm.

## FACTS AND PROCEDURE

[¶ 2.] In 1988, Tom Hildebrand built a house for himself and his family on 42 acres of land near Sturgis, South Dakota. Although Tom was a concrete contractor, this was the first house he had constructed. Because he had no experience at soil excavation, Tom hired a third party to excavate the basement. He did not consult an engineer or an architect regarding the construction of the house.

[¶ 3.] Shortly after moving into the house, Hildebrands began noticing structural problems. A particularly wet spring in 1989 caused the soil to heave. Once the house settled, the interior walls and floors cracked. An engineer informed them that the problems resulted from the expansive soil[1] on which the house was built. The engineer advised Hildebrands to allow the soil to dry for two years before repairing the damage. In the spring of 1991, Hildebrands removed all the interior walls and floors. Although not specifically recommended by the engineer, they also excavated 4–6 inches of soil from under the house and replaced it with gravel. In

---

1. This soil type, which is common in western South Dakota, expands to several times its normal size when saturated.

addition, extensive landscaping was performed around the house in an attempt to remedy the problems caused by the expansive soil. Despite these efforts, cracks reappeared on the interior walls.

[¶ 4.] In early 1994, Hildebrands purchased another acreage and attempted to sell their current house. They completed sellers' property disclosure statements on February 11, 1994 and July 23, 1994.[2] On both statements, they disclosed structural problems with the house. Specifically, they noted cracked walls and floors, previous roof leakage, and the existence of expansive soil on the property. An addendum, drafted with the help of Hildebrand's lawyer,[3] was attached to the statements to explain the problems they had experienced with the house. It provided:

> We moved into this house on November 22, 1988. We did not have it completed due to the weather. The area incomplete on the outside of the structure was missing rain gutter[s] and downspouts and part of the foundation was not backfilled.
>
> In the Spring of 1989, we had rain lasting for 9 days that totaled 7 or 8 inches. All of this moisture coming off the roof with no rain gutter[s] caused the backside of the house to settle. We had drain tile already installed and, because of that, all the water was evenly distributed. The only cracking on the back wall is on the garage. This is a hairline crack which has not moved since it happened.
>
> When the house settled, the inside floors stayed in place, which caused the interior walls to crack. We had an engineer from the School of Mines come and explain to us exactly what had happened and what to do about it. He explained the area all around us is known to have shale and gumbo for soil. We had a soil test done to confirm this. The engineer advised us to wait two years and let the soil completely dry out before trying to fix it.
>
> In the Spring of 1991, we moved into the upstairs and removed all of the interior walls and floors and replaced them. Since that time, we have had some sheetrock cracking in the kitchen/living room area, master bedroom area and other bedroom. These have all been repaired. The kitchen floor had a crack, which is normal for the size of the floor. We filled the crack and replaced the 14 tile[s] it affected. On the outside of the house, we have poured patios and sidewalks in the front and back to prevent water from getting close to the foundation of the house.

In the fall of 1994, Parmelys purchased the house and the 42 acres surrounding it for $175,000.[4] Parmelys received the disclosure statements and the addendum before the sale.

[¶ 5.] In February 1995, Parmelys began experiencing problems similar to those suffered by Hildebrands, including roof leakage, cracks on the walls and floors, windows and doors that did not close properly, and swelling of the floor. Parmelys sued Hildebrands for allegedly failing to disclose known defects as required by SDCL 43–4–44, fraudulent concealment, negligent construction and breach of warranty. The circuit court granted summary judgment in favor of Hildebrands on all claims. This Court reversed that decision

---

2. The second disclosure statement was completed because the Legislature amended the statutory form, effective July 1, 1994. SL 1994, ch 337.

3. The attorney who drafted this document did not represent Hildebrands in this action.

4. Parmelys were aware that the property had been appraised for as much as $250,915.

as to the claims for inadequate disclosure and fraudulent concealment. *Parmely v. Hildebrand,* 1999 SD 157, 603 N.W.2d 713. On remand, the parties submitted the action to the circuit court on pleadings, exhibits, and depositions. This was essentially the same record the trial court had before it at the time of the motion for summary judgment. The trial court found that Parmelys had failed to establish by a preponderance of the evidence that Hildebrands had not adequately disclosed the known defects in the property and had fraudulently concealed those defects. Parmelys have appealed from that judgment.

## ISSUE PRESENTED

Whether Parmelys established Hildebrands' noncompliance with the standards of SDCL chapter 43–4 in disclosing the condition of the home as it existed at the time of the sale.

## STANDARD OF REVIEW

■ [¶ 6.] This case was presented to the trial court through prepared written statements of facts, exhibits, and depositions. In such a situation, we would have previously reviewed a trial court's findings of fact de novo. *See State Div. of Ins. v. Norwest Corp.,* 1998 SD 61, ¶ 11, 581 N.W.2d 158, 160. However, last year the legislature amended SDCL 15–6–52(a), which now requires all findings of fact, "whether based on oral or documentary evidence" to be reviewed under the clearly erroneous standard. SL 2000, ch. 91, § 1. Therefore, the trial court's findings of fact will not be set aside unless "we are left with a definite and firm conviction that a

mistake has been made." *Arnold Murray Constr., LLC v. Hicks,* 2001 SD 7, ¶ 6, 621 N.W.2d 171, 174. A trial court's conclusions of law are reviewed de novo. *Id.* Statutory disclosure statements essentially create a contract between the parties to a land sale. Therefore, the statements are reviewed de novo and we apply the customary rules associated with the construction and interpretation of a contract. *Mahan v. Avera St. Luke's,* 2001 SD 9, ¶ 15, 621 N.W.2d 150, 154.

## ANALYSIS AND DECISION

■ [¶ 7.] While Parmelys have alleged both inadequate disclosure and fraudulent concealment, this matter is essentially based on the statutory disclosure laws found in SDCL chapter 43–4.[5] Therefore, we will restrict our analysis to whether Hildebrands fulfilled their obligations under those statutes.

[¶ 8.] A seller of residential property is required to complete a copy of the statutory disclosure statement. SDCL 43–4–38. If the disclosure statement is filled out completely, truthfully, and in good faith, the seller will not be liable for defects in the property. *Id.* §§ 43–4–40, 43–4–41. However, when defects are negligently or intentionally concealed, the seller will be liable for the damages suffered by the buyer. *Id.* § 43–4–42.

■ [¶ 9.] We first interpreted the mandatory disclosure statutes in *Engelhart v. Kramer,* 1997 SD 124, 570 N.W.2d 550. Initially, we noted that a disclosure statement does not create a warranty by the seller to the buyer as to the condition of the property. *Id.* ¶ 10, 570 N.W.2d at 552 (quoting SDCL 43–4–44). We also

---

5. Parmelys acknowledge as much in their brief by not separating the two issues in violation of SDCL 15–26A–60(6) and by failing to cite any authority on their fraudulent misrepresentation claim. "The failure to cite supporting authority is a violation of SDCL 15–26A–60(6) and the issue is thereby deemed waived." *State v. Pellegrino,* 1998 SD 39, ¶ 22, 577 N.W.2d 590, 599.

emphasized that sellers are not strictly liable under those statutes. *Id.* ¶ 18, 570 N.W.2d at 554. A negligent or intentional failure to disclose known defects is required before liability attaches. *Id.* We concluded that:

> the doctrine of *caveat emptor* has been abandoned in favor of full and complete disclosure of defects *of which the seller is aware.* We are not inferring, as Kramer suggests, that a seller must possess the expertise of a structural engineer to pass good faith muster. Nor are we suggesting that a seller will be liable for defects of which she is unaware.

*Id.* ¶ 20 (emphasis added). Since *Engelhart,* we have stated that merely putting a buyer on notice of defects is not sufficient, known defects must be revealed truthfully and in good faith. *Parmely,* 1999 SD 157, ¶ 9, 603 N.W.2d at 716.

[¶ 10.] Parmelys claim that Hildebrands did not disclose all the defects of which they were aware. They allege Hildebrands knew the repairs to the house did not cure the expansive soil problem, but yet Hildebrands represented in the addendum that the repairs had cured the predicament. As support for their assertion, Parmelys point to Tom's deposition, where he testified that he knew the expansive soil still existed under his house and that the potential for problems existed, even after the renovations to the house. Parmelys allege that statement conflicts with the assertion in the addendum that the problems had been repaired.

[¶ 11.] Sellers of residential real property must disclose all known defects on the property. *Engelhart,* 1997 SD 124, ¶ 20, 570 N.W.2d at 554. Pursuant to this duty, Hildebrands completed two statutory disclosure statements. On both disclosure statements, Hildebrands noted that expansive soil was an *"existing* hazardous condition"* (emphasis added). Hildebrands also disclosed cracked walls and floors, as well as roof leakage. These were the defects of which they were aware at the time of sale. As conceded by Parmelys in their brief, Hildebrands did not discover how to fix the problem with expansive soil until 1995, one year *after* the house was sold. Only at that time did Tom learn that expansive soil could be excavated and replaced with engineered soil. Before 1995, the only knowledge Hildebrands had were the statements made by an engineer that they should allow the soil to dry before attempting repairs. Parmelys have failed to prove by a preponderance of the evidence that Hildebrands had any knowledge of defects, at the time of the sale, which were not disclosed.

[¶ 12.] Despite the fact that Hildebrands disclosed all the information known to them at that time, Parmelys claim the addendum misled them into believing the problem had been cured. Parmelys' assertion that the addendum was cleverly drafted to give the false impression that the expansive soil problem was cured is unfounded by a reading of the entire addendum. They assert the statement, "[t]hese have all been repaired" was meant to mislead potential buyers into thinking it applied to all the problems with the house. However, we do not read contractual provisions in isolation, rather we read the entire document as a whole. *Kimball Investment Land, Ltd. v. Chmela,* 2000 SD 6, ¶ 14, 604 N.W.2d 289, 293. When read in context, the statement clearly indicates only that the cracked sheetrock had been repaired.[6] It makes no representation as

---

6. The dissent accuses Hildebrands of "cleverly" repairing the damages to the home. The obvious fact that the dissent ignores is that the repairs resulted in a gutting and rebuilding of the house interior which was completed in 1991, three years before Hildebrands

to curing the expansive soil. After stating that the cracked sheetrock had been repaired, the addendum notes additional problems and attempted remedies. A crack in the kitchen floor was filled in and the affected tiles were replaced. A patio and sidewalks were installed to keep water away from the foundation. If the statement "[t]hese have all be repaired" applied to every defect on the property, this additional information would be meaningless and redundant. However, when the addendum is read as a whole, it simply lists known problems with the home and efforts taken to cure those problems. To read that statement as Parmelys suggest would in effect establish a warranty by Hildebrands. While a seller may grant a buyer a warranty, Hildebrands clearly did not intend such a result. Nor is such a warranty established under the disclosure statutes. *See* SDCL 43–4–44 (a disclosure statement "is not a warranty of any kind by the seller. . . ."); *Engelhart*, 1997 SD 124, ¶ 10, 570 N.W.2d at 552.

[¶ 13.] Parmelys further assert that if Tom, with his years of construction experience, was unaware of the full effect of expansive soil, they cannot be expected to understand the significance of that term. Whether Parmelys understood the significance of expansive soil is irrelevant under the statutory requirements of SDCL chapter 43–4. Liability attaches to a seller only if a defect is not disclosed. SDCL 43–4–42. Once the disclosure statement is truthfully completed, in good faith, a seller is absolved from liability, regardless of the buyer's appreciation of that information. *Id.* § 43–4–40. The fact that Parmelys did not appreciate the significance of the information conveyed to them, and failed to seek the advice of professionals as to the consequences of the situation, will not impose liability on Hildebrands.[7]

[¶ 14.] We advised in *Engelhart* that sellers need not possess the knowledge of a structural engineer to satisfy the requirements of SDCL 43–4–37 through 43–4–44. They need only disclose the defects of which they are aware. *Engelhart*, 1997 SD 124, ¶ 20, 570 N.W.2d at 554. The trial court concluded that a preponderance of the evidence established that

---

decided to sell the home. The dissent fails to explain what is so "clever" about repairing the home one thereafter lives in. Those repairs, completed three years prior to sale, are now characterized by the dissent as cosmetic and internal, rather than curing the heart of the problem. This characterization trivializes the scale of the repairs and ignores the admission by Parmelys that, at the time of sale, Hildebrands did not know how to cure the "heart" of the problem. These "cosmetic and internal" repairs were merely an attempt to make the house more livable, based on Hildebrands' knowledge at the time. To assume deceptive intent and impose liability for repairing a house three years prior to its sale goes well beyond what the legislature intended when it enacted the statutory disclosure requirements. It improperly elevates the seller's responsibility to that of a warranty.

7. Although we decline to re-write the statutes to require sellers to educate potential buyers,

even that argument will not rescue Parmelys in this case. While on notice that Hildebrands thought it necessary to consult an expert as to the existing soil problem, Parmelys failed to retain such expert assistance before purchase. If they had any question as to the meaning of the disclosure statement, they neither sought clarification from Hildebands nor consulted an attorney as to its meaning and ramifications. At no time during this litigation did Parmelys provide the Court with expert testimony to support their claim concerning the soil situation. Despite the fact that they shouldered the burden of proof, they waived their chance to testify live in front of the trial court, or force Hildebrands to do the same, which would have allowed them to advance a claim of having greater credibility. Instead, they asked the trial court to decide the trial basically upon the same cold record as was submitted at the time of the motion for summary judgment.

Hildebrands truthfully, completely and in good faith, disclosed all the defects known to them. When asked at trial what information should have been conveyed to Parmelys, counsel replied that "the only thing that would fix the expansive soils would be ... to completely excavate it." That information was not known to Hildebrands until after the sale had been completed. Indeed, the information sought by Parmelys deals with potential *remedies* to known defects on the property. While sellers are required to disclose the condition of the property, there is no statutory authority to further require them to disclose possible remedies to those defects.[8] *See* SDCL 43–4–44.

[¶ 15.] Parmelys failed in their burden of proof to produce sufficient evidence to convince the trial court that Hildebrands did not disclose pertinent information known to them at the time of the sale. We agree with the trial court's assessment. Therefore, their claim of inadequate disclosure must fail.

[¶ 16.] Judgment is affirmed.

[¶ 17.] MILLER, Chief Justice, and KONENKAMP, Justices, concur.

[¶ 18.] SABERS and AMUNDSON, Justices, dissent.

SABERS, Justice (dissenting)

[¶ 19.] The majority opinion concludes that Hildebrands completed the addendum both "truthfully and in good faith." It is difficult to accept this conclusion as a serious statement.

[¶ 20.] I believe our decision in *Engelhart v. Kramer*, 1997 SD 124, 570 N.W.2d 550, commands a contrary result. In *Engelhart*, we emphasized the legislative definition of good faith:

> An honest intention to abstain from taking any unconscientious advantage of another, *even through the forms or technicalities of the law*, together with an absence of all information or belief of facts which would render the transaction unconscientious.

SDCL 2–14–2(13) (emphasis added). I am convinced that Hildebrands forfeited the good faith protection by creating a document that was designed to mislead. What more of a demonstration is needed than the one provided by the majority opinion: a legally drafted document with the proper tense of the word "existing" absolves the seller from liability. Close examination of the cleverly drafted document reveals the "intentional or negligent violation" of the disclosure requirements contained in SDCL chapter 43–4.

[¶ 21.] The addendum at issue attempts to minimize, distract and reassure the would be buyer that all problems had been taken care of properly.[9] The document

---

8. In fact, if sellers do suggest remedies to the defects, upon which buyers rely, are sellers exposing themselves to a claim for future liability should their suggested remedies fail?

9. Sellers continually blame buyers for failing to discover the defects in the home. In fact, counsel for sellers stated at trial: "To any reasonable person who sees that there's an existing hazardous condition, without regard to their knowledge of what expansive soil means, that would indicate to any reasonable person that there is a substantially severe problem with the home."

The obvious point is if a reasonable person would have known something is wrong, then why do sellers adamantly maintain that they did not know enough to trigger full disclosure. Even if we were to accept sellers' argument they knew nothing, but that buyers should have, why were they clever enough to employ cosmetic repairs and a cleverly crafted disclosure statement? This is not the type of good faith envisioned by the legislature or this Court in *Engelhart*.

In fact, all of the repairs and remedies taken by the sellers were internal and cosmetic. None of them went to the heart or cause

begins by convincing the prospective purchaser that any problems were due to the weather and the sellers' inability to have the house properly completed. Then the document reassures its reader that after the rain gutter and drain tile had been installed, only minimal problems were present. After that, the document switches to the soil condition, characterizing the very significant damage to this house as occurring from settling, making the prospective buyer believe it was a one time ordeal by prefacing the severe damage by "when the house settled." Then they relay that they had an engineer tell them "what to do about it." This consisted of waiting two years and fixing the problem. The disclosure statement picks up with the fact that exactly two years later they "removed all interior walls and replaced them" and they "had some sheet rock cracking" but "it has all been repaired."

[¶ 22.] No wonder the buyers were deceived. I see no reason for this disclosure except to reassure and convince the prospective buyer that all problems were fixed. That is not all. The document then continues to reassure the prospective buyer that the floor had a crack that damaged 14 tiles in the kitchen, but that was normal. After all the problems with this home, I suspect that definition of "normal" is in the eyes of the seller only.

[¶ 23.] Then there is the use of the magic word "existing" to attempt to absolve Hildebrands of liability. The word existing when used to describe the expansive soil was proper, this is only because the soil was still present. However, that does not end the inquiry. The disclosure addendum attempted to negate the existing and continual damage to the home by leading the prospective buyer to believe it had been repaired and remedied. I do not

believe this type of word game or hide the ball tactic is what this Court envisioned when it stated: "We hold that with the adoption of South Dakota's detailed disclosure statutes[,] the doctrine of caveat emptor has been abandoned in favor of full and complete disclosure of defects of which the seller is aware." *Engelhart*, 1997 SD 124, ¶ 20, 570 N.W.2d at 554. It certainly is not what I envisioned. This majority opinion instead serves as a warning that buyer be aware more than ever before.

[¶ 24.] Obviously, the legislature never intended that buyers would have to hire lawyers to help them read deceptively disguised disclosure statements or be at their peril. The buyer must now heighten his awareness because disclosure statements designed to deceive are written by lawyers and approved by this Court. As a matter of law, the trial court's conclusion was in error and we must reverse for a determination of damages. The buyers' attorney stated in oral argument that buyers purchased the home on forty acres for $175,000, that the present value of the home is a salvage value of between $15,000 and $25,000, thrusting a possible $150,000 loss on the backs of the deceived buyers and the windfall goes to a contractor who has been building foundations in the Black Hills soil for twenty years. This may be the most outrageous result and whitewash opinion by this Court ever.

[¶ 25.] Therefore, I dissent.

[¶ 26.] AMUNDSON, Justice, joins this dissent.

---

of the problem, the expansive soil. They just tried to make them look that way.