[No. D017921. Fourth Dist., Div. One. May 11, 1993.]

ANDREW LOUGHRIN, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
IRWIN BARR, Real Party in Interest.

COUNSEL

G. S. Wampler and R. J. Barberio for Petitioner.

No appearance for Respondent.

Graham K. Fleming and Robert B. Coffin for Real Party in Interest.

OPINION

FROEHLICH, J.—This petition, brought under Code of Civil Procedure section 437c, subdivision (*l*), seeks a writ of mandate directing the superior

court to reverse its order granting summary adjudication. The complaint which was the subject of the summary judgment motion contained five causes of action. Summary judgment was denied because the court found certain of the causes of action to be viable. Summary adjudication was granted in favor of the defendant, however, as to the first cause of action. This cause of action was based on the alleged negligent failure of the defendant, Irwin Barr, a seller of residential real estate (sometimes called Seller herein), to make appropriate disclosures of defects in the real property in accordance with the statutory duty set forth in Civil Code[1] section 1102 et seq.

The thrust of the summary judgment motion did not reach the question of whether concealed defects actually existed respecting the realty. The sole ground of defense was that Seller's potential liability for nondisclosure of defects was waived by the insertion in the sales agreement of a provision to the effect that the property was purchased "as is."

The clause upon which Seller relies is contained in a printed addendum to the real estate purchase contract and receipt for deposit, which document constituted the basic written agreement for purchase and sale of the realty, signed by both Seller and the plaintiff buyer, Andrew Loughrin (sometimes called Buyer herein). The provision is entitled "Disclaimer for 'As Is' Sale," and states:

"BUYER ACKNOWLEDGES Purchase price reflects deferred maintenance and SELLER shall have no responsibility or liability whatsoever to BUYER or Buyer's assign or successor and SELLER has made no representation or warranty with respect to the physical condition or compliance with state or local building codes and ordinances of the property which is the subject of this Agreement or as to any part, aspect or item hereof. SELLER makes no express or implied warranty with respect to said property as to its condition or illness [meaning, we assume, fitness] for general or specific use. BUYER has relied solely upon BUYER's inspection and evaluation of the property either performed by the BUYER or Contractor in determining the condition and fitness of the property. In executing this Agreement BUYER accepts the property in its 'As Is' condition and waives any claim, demand or cause of action against SELLER and BROKERS."

Buyer contends that this detailed "as is" provision was never accepted, but admits that in subsequent documentation it was agreed that the property was purchased "as is." This issue was not resolved in the trial court's grant of summary adjudication. While we would reach the same conclusion whether the controlling clause be the extended language quoted above, or simply a

---

[1] All statutory references are to the Civil Code unless otherwise specified.

shortened reference to a sale "as is," we proceed upon the assumption that we deal simply with a stock "as is" clause, and therefore refer to authority dealing with "as is" provisions in terms of a uniform legal effect from the use of the phrase. As stated in *Shapiro* v. *Hu* (1986) 188 Cal.App.3d 324, 333 [233 Cal.Rptr. 470]: "[A]ny sale of property 'as is' is a sale of the property in its 'present or existing condition'; the use of the phrase 'as is' relieves a seller of real property from liability for defects in that condition. The only exception to this principle is when a seller, through fraud or misrepresentation, intentionally conceals material defects not otherwise visible or observable to the buyer." In terms of potential liability for negligent misrepresentation, *Katz* v. *Department of Real Estate* (1979) 96 Cal.App.3d 895 [158 Cal.Rptr. 766] provides the following rule at page 901: "[A]n 'as is' provision, 'generally speaking, . . . means that the buyer takes the property in the condition visible to or observable by him. [Citations.]' . . . 'It . . . does not in itself protect . . . or absolve [a seller] from liability for . . . passive concealment.' "

Buyer's contention contained in the first cause of action states no claim for common law misrepresentation, but is based upon an alleged failure to comply with the disclosure requirements of section 1102 et seq. These sections, adopted in 1985, require that "[t]he transferor of any real property subject to this article shall deliver to the prospective transferee the written statement required by this article . . . in the case of a sale, as soon as practicable before transfer of title." (§ 1102.2.) The form of disclosure is set forth in section 1102.6 in great detail, requiring that the seller specifically answer "yes" or "no" as to whether Seller is aware of any significant defects in a long list of residential components, including "Foundation . . . Slab(s) . . . Driveways . . . Structural Components." Section 1102.13 provides that failure by the seller to comply with these requirements does not invalidate the sale, but that "any person who willfully or negligently violates or fails to perform any duty prescribed by any provision of this article shall be liable in the amount of actual damages suffered by a transferee."

The first cause of action of Buyer's complaint alleges a "failure to disclose [Seller's] awareness of significant defects/malfunctions in . . . floors . . . foundation . . . slab . . . ," in violation of the requirements of section 1102 et seq. Papers filed in connection with the summary judgment motion establish that Seller did in fact fill out and deliver the form required by section 1102.6. Buyer's position, therefore, is clear: the first cause of action alleges that Seller negligently misrepresented, or concealed, the existence of defects in the realty when the section 1102.6 form was prepared.

The issues presented for our review, as framed by Seller, are: (1) May the disclosure requirements of section 1102 et seq. be waived by a buyer, and (2) Is waiver accomplished by a sale in "as is" condition? Citing *Tunkl v. Regents of University of California* (1963) 60 Cal.2d 92 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693], Seller contends that a waiver of protective rights established by statute may be accomplished, and will be enforced, when the interests involved are private, as distinguished from rights affecting a public interest. Seller contends that since this was a private sale of a residence, between parties on an equal bargaining footing, the waiver should be effective. Seller also contends that the inclusion of the "as is" provision in the sales agreement imports such waiver into the transaction. The trial court agreed.

■ We first address the contention that the disclosure requirements of section 1102 et seq. cannot be waived. ■ The start of any discussion of waiver must be section 3513, which provides that "[a]nyone may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." *Tunkl v. Regents of University of California, supra,* 60 Cal.2d 92, contains an extensive discussion of the factors which will invest a law with "public interest" so that its requirements are not subject to waiver.' A transaction involving the public interest is one, the court stated, which exhibits some or all of the following characteristics:

"It concerns a business of a type generally thought suitable for public regulation. The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards. As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence. Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents." (*Tunkl v. Regents of University of California, supra,* 60 Cal.2d at pp. 98-100, fns. omitted.)

■ We find that none of the characteristics cited in *Tunkl* as creating a "public interest" exists in the typical private real estate purchase and sale

transaction. Neither the parties nor their real estate representatives are engaged in a transaction of any great importance to the public, generally. The transaction is essentially private in nature—there is no "holding out" to the public. Neither sellers nor buyers are definitionally in superior bargaining positions, and the agreements they sign are not ordinarily adhesion contracts. In short, the relationship between real estate buyers and sellers, generally and as applicable to this case, is more like that earlier described in *Tunkl*, in which an exculpatory provision was enforceable where "the parties when contracting stood upon common ground, and dealt with each other as A and B might deal with each other with reference to any private business undertaking." (*Tunkl* v. *Regents of University of California, supra,* 60 Cal.2d at p. 96.)[2]

Our conclusion that the provisions of sections 1102 et seq. are waivable is enforced by section 1102.13, which provides that a failure to comply with the article will not invalidate the real estate transfer, but will simply subject the person failing to perform to "actual damages suffered by a transferee." The contemplation of failure to abide by the requirements of the statute, as contained within the statute itself, indicates that the purpose of the statute is to facilitate private transactions rather than impose regulations for the general public benefit. This conclusion is supported by the legislative history of the statute. *Easton* v. *Strassburger* (1984) 152 Cal.App.3d 90 [199 Cal.Rptr. 383, 46 A.L.R.4th 521] had imposed liability on a seller and his broker for negligent failure to disclose facts affecting the value of real estate the subject of a sale. The California Association of Realtors sponsored the legislation in order to clarify and facilitate the required disclosures.[3] The beneficiaries of the statute were individual buyers of real estate and brokers representing both buyers and sellers. That these beneficiaries could waive compliance is suggested in the Legislative Counsel's Digest of the bill,[4] which provides that "[i]f the responsible broker cannot obtain the required disclosures *and they are not otherwise delivered or waived,* the broker would be required to advise the prospective transferee of his or her rights under the bill." (Italics added.)

---

[2] 1 Miller and Starr, Current Law of California Real Estate (2d ed. 1992 supp.) Contract Law, § 1:127, page 73 suggests that a contract between real estate buyer and seller should not be considered "in the public interest," and contrasts this conclusion with that which the authors presume would result from an attempt to include an exculpatory clause in the contract between a real estate broker and his principal. This distinction seems well taken to us, since in the latter case we do deal with parties not ordinarily in equal bargaining positions, the situation is usually adhesive in nature, and there is an evident public interest in protecting a class of consumers (principals not versed in real estate law) from professional providers (the brokers).

[3] See Senate Rules Committee, Analysis of Senate Bill No. 1406 (1985-1986 Reg. Sess.) as amended May 30, 1985, at page 3.

[4] See Legislative Counsel's Digest of Senate Bill No. 1406 (4 Stats. 1985 (Reg. Sess.) Summary Dig., p. 599).

We therefore conclude that a knowing and explicit waiver of the benefits of section 1102 et seq. can be effective. We next inquire as to whether the insertion of an "as is" clause, either in general or in the expanded detail utilized in this transaction, will achieve that result. The theoretical difficulty encountered here is that, contrary to the apparent assumptions of many people dealing in real estate (including some brokers), a sale "as is" is not the equivalent of a waiver of potential claims of misrepresentation. As noted above, the "as is" sale simply means the buyer accepts the property in the condition visible or observable by him. An added provision in the waiver clause, such as contained in this case, indicating the buyer relies on his own inspection of the property, presumably waives any obligation the seller or his broker may otherwise have to inspect the property for defects, and hence may avoid a claim for negligent failure to know of and advise of such defects. Even such augmented "as is" clause, however, does not address the issues of: (1) intentional misrepresentation, (2) fraudulent concealment, or even (3) negligent concealment not related to failure to inspect.

If the use of an "as is" clause will not protect against claims based on common law misrepresentation, a fortiori it will not insulate the seller from claims based on the disclosure requirements of section 1102 et seq. Particularly would this seem to be true when the parties actually utilize the disclosure form provided by section 1102.6. While seller in this case utilized the "as is" clause set forth above in the printed addendum to the purchase contract, the body of the contract, in paragraph 13, specifically referred to the disclosure statement required by section 1102 et seq. and, by checked boxes, provided that Seller should furnish Buyer with such statement within five calendar days after Buyer's acceptance of the contract. This obligation to provide the disclosure statement was restated in a separate paragraph in the same addendum which contained the "as is" provision. The escrow instructions subsequently executed also provided that "Seller [is] to provide a Transfer Disclosure Statement within 5 days from the date hereof."

Finally, Seller prepared and executed the detailed disclosure form, on the printed form and in the manner required by section 1102.6. In answer to the question in the form asking whether Seller is aware of any significant defects or malfunctions in any of the various components of the house, Seller checked the box indicating "no."

"The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (§ 1641.) "[W]here there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." (Code

Civ. Proc., § 1858.) We find that the several clauses used in the purchase contract in this case are not necessarily inconsistent and in fact can be harmonized. The "as is" provision alerted the buyer to the deteriorated and depreciated nature of the property, gave notice that the seller was making no inspection, and further advised that the buyer was taking the property with all its obvious and patent defects. These commitments, however, do not preclude the possibility of a claim of misrepresentation for failing to reveal concealed defects not apparent from an inspection of the property, including not only intentional but negligent misrepresentations. While the waiver clause in this case can fairly be construed as avoiding claims for negligent misrepresentation based upon defects seller should have known existed but did not because of lack of inspection, there remain other possibilities of claims based on negligence.[5]

We therefore conclude that it is possible for Buyer to prevail in his contention that the purchase contract was not intended to insulate Seller from liability for misrepresentation in the preparation of the statutory disclosure form. Accordingly, the question could not be decided as a matter of law, and it was error for the trial court to issue its order denying recovery under the first cause of action.

Let the writ of mandate issue requiring the superior court to vacate its order precluding relief based on the first cause of action of the complaint herein. Plaintiff is entitled to costs incurred in this petition.

Todd, Acting P. J., and Benke, J., concurred.

A petition for a rehearing was denied May 26, 1993.

---

[5]In argument, for instance, it was asserted that Seller knew of major defects in the property because he had caused substantial repairs and renovations to be done in the past, during which time the defects, such as uncompacted fill under a portion of the house, were discovered. Without the opportunity to present a claim for negligent misrepresentation, buyer contends he will be precluded from meeting a claim of honest but merely negligent inadvertence or forgetfulness in failing to note such defects on the statutory disclosure form.