SIXTH DIVISION

June 21, 2002 

No. 1-99-1691

WILLIAM C. COUGHLIN AND ) Appeal from the

PAMELA COUGHLIN, ) Circuit Court of

) Cook County.

Plaintiffs-Appellants, ) 

)

v. ) No. 97 L 6519

)

NUALA GUSTAFSON, ) The Honorable

) David G. Lichtenstein,

Defendant-Appellee. ) Presiding Judge.

JUSTICE BUCKLEY delivered the opinion of the court:

This appeal arises from summary judgment entered in favor of defendant Nuala Gustafson and against plaintiffs William Coughlin and Pamela Coughlin on plaintiffs' four-count complaint which alleged breach of a real estate sales contract, violation of the Residential Real Property Disclosure Act (the Disclosure Act) (765 ILCS 77/1 
et seq.
 (West 1998)), negligence in the removal of fuel oil tanks and cleaning of contaminated areas, and breach of implied warranties of habitability.  Plaintiffs concede that summary judg-ment was proper as to count IV; therefore, we address only the propriety of summary judgment on counts I through III.  The issues on appeal are:  (1) whether the merger doctrine bars plaintiffs' breach of contract action; (2) whether the merger doctrine bars plaintiffs' action under the Disclosure Act; (3) whether there are genuine issues of material fact which preclude summary judgment on plaintiffs' action under the Disclosure Act; and (4) whether there are genuine issues of material fact which preclude summary judgment as to defendant's alleged negligence.  For the reasons that follow, we reverse and remand for further proceedings.

I.  Background

On February 27, 1996, plaintiffs entered into a real estate sales contract with defendant to purchase defendant's home located at 129 South Old Creek Road, Palos Park, Illinois.

The contract contained, 
inter alia
,
 a home inspection rider, which gave plaintiffs the right to have the property inspected by a certified home inspection service of their choice.  The rider pro-vided:

"If said condition report reveals any struc-tual mechanical, and electrical defect(s) for which the cost of correcting any said defect(s) shall exceed $1,000.00, the Seller shall have the following options, to wit: (A) effecting the necessary correction of said defect(s), (B) negotiating the cost of correcting said defect(s) with Buyer or (C) declaring this agreement null and void.

In the event Seller does not exercise any of these options and, in the further event, that the Buyer does not waive said defect[s], the Buyer shall have the right to declare this agreement null and void.  Should either party to this agreement make such a declaration, any deposit made by the Buyer shall be refunded in full."

Also, attached to the contract was a rider entitled, "Rider #5, Seller's Representations," which provided:

"The Seller represents to the Buyer that all mechanical equipment, heating and cooling equipment, water heaters and softeners, sep-tic, plumbing, electrical systems, kitchen equipment remaining with the premises, and any miscellaneous mechanical personal property to be transferred to the Buyer shall be in operating condition at the time of closing.  In the absence of written notice of any deficiency from the Buyer prior to closing, it shall be concluded that the condition of the above equipment is satisfactory to the Buyer and the Seller shall have no further responsi-bility with reference thereto."

The language below the signature line on rider No. 5 states "Certification that roof and foundation are waterproof."  The last paragraph on rider No. 5 provides:  "Seller will provide written verification from the appropriate governmental authority that the tanks [oil] remaining in crawl space are not in violation of any ordinance or statute."

The contract also provides:

"Seller, at his expense, prior to closing, shall obtain and deliver to Buyer a water test performed or acceptable to the county in which the property is located, and a septic system test indicating that the system is in proper operating condition and in compliance with applicable state, county and local statutes.  Such tests shall be performed not more than 60 days prior to the closing date.

If either of said written test reports indicate that the water is not potable, that the septic system is not in proper operating condition, or that the systems are not in compliance with the relevant statutes, Seller shall have the option to make the necessary repairs and bring the system[s] into compli-ance prior to the closing date.  In the event Seller elects not to make the necessary repairs, then this Contract, at the option of Buyer, shall become null and void, and all earnest money shall be refunded to Buyer."

On March 10, 1996, a representative of HouseMaster of America, a home inspection service retained by plaintiffs, inspected the property.  The report issued to plaintiffs included the following observations of the crawl space:  "(2) oil, (2) water tanks noted in crawl.  Heavy smell of oil.  (Saturated with oil) on floor.  Recommend evaluation by Health Department."  Plaintiff William Coughlin attended the inspection and, on March 11, 1996, wrote a letter to defendant's attorney stating that he had personally been in the basement, had seen the oil residue, and had smelled the petroleum odor.  Plaintiffs requested that defendant remove the fuel tanks and have any contaminated areas cleaned professionally prior to purchase.  Plaintiffs gave defendant the name of E.R.I. General Contracting to perform the job and defendant subsequently engaged their services.

On May 23, 1996, Carl's Septic Service, Inc., inspected the septic system and issued a report finding, "[s]eptic field lines are leaking at ends."  The parties agreed that defendant would place $1,000 of the proceeds of the sale in an escrow account to ensure the repair of the septic system.  In a letter dated June 3, 1996, Carl's Septic Service, Inc., informed plaintiff William Coughlin that the cost of repairing the septic system would range from $8,000 to $9,000.  

With regard to the roof, defendant stated at her deposition that she contacted a roofer to obtain certification that the roof was waterproof but he could not come out before the closing.  She stated that she informed plaintiffs of this fact.  She further stated that she did not agree to furnish certification after closing.

The closing took place on June 3, 1996.  The record contains no evidence that plaintiffs gave written notice to defendant of any remaining deficiency.  There is no evidence that plaintiffs exercised their right to declare the contract null and void, refused to go through with the closing, or objected to the closing in any way.

On June 2, 1997, plaintiffs filed a four-count complaint against defendant and E.R.I. General Contracting.  Count I of the complaint alleged that defendant breached the terms of the written real estate contract by failing to provide certification that the roof and foundation were waterproof and that the septic system was in operating condition.  Count II alleged that defendant failed to disclose material defects in the septic system, roof, and founda-tion in violation of the Disclosure Act (765 ILCS 77/1 
et seq.
 (West 1998)).  Count III alleged that defendant was negligent in her removal of the underground oil tanks and in cleaning the areas contaminated by fuel oil.  Count IV alleged that defendant was guilty of violation of implied warranties of habitability.  On January 12, 1999, defendant filed a motion for summary judgment as to all counts.  On April 1, 1999, the trial court granted plain-tiffs' oral motion to nonsuit E.R.I. General Contracting and, in addition, granted defendant's motion for summary judgment.  As to counts I and II of the complaint, the trial court found as follows:

"Plaintiff[s'] contract claim [count I] and 'statutory claim' [count II] must fail because on the face of this record it is clear that the terms of the written contract were met.  Plaintiffs accepted an escrow fund and elected to close when they were not obligated to do so, with full knowledge of the state of affairs at the subject property.  Indeed, even now plaintiffs have not sought recovery against the escrow fund.  On this record it is clear that the contract has merged into the deed exchanged for good and valuable conside-ration."

As to count III, the trial court found:

"Plaintiffs' 'negligence' claim [count III] is somewhat obscure.  Plaintiffs seek relief against both [defendant] and E.R.I. General Contracting for asserted negligence in remov-ing oil tanks from the property.  The record makes clear however, that [defendant's] duties to plaintiffs in this regarded [
sic
], if any, were contoured by the written contract between the parties.  E.R.I. General Contracting owed duties in this regard not to plaintiffs, but to defendant."

Plaintiffs now appeal as to counts I through III.

II. Discussion

A.  Standard of Review

Summary judgment is proper only when the pleadings, together with any depositions, admissions, or affidavits on file demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 1998)); 
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90 (1992).  Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt.  
Purtill v. Hess
, 111 Ill. 2d 229, 240 (1986).  The standard of review on appeal from a grant of summary judgment is 
de novo
.  See 
Outboard Marine Corp.
, 154 Ill. 2d at 102.

B. Breach of Contract

Plaintiffs first contend that the trial court erred in granting summary judgment on count I of their complaint because defendant breached the written real estate contract by failing to provide certifications that the roof and foundation are waterproof and that the septic system is in proper operating condition.  We find that the trial court erred in holding that the merger doctrine bars plaintiffs' breach of contract claim.

The doctrine of merger provides that in the absence of an express clause in a contract, all agreements between a buyer and a seller of real estate merge into the deed when it is delivered to the buyer at closing.  See 
Ollivier v. Alden
, 262 Ill. App. 3d 190, 195 (1994).  Although the doctrine is not favored by modern courts, it has not been rejected by Illinois courts.  See 
Krajcir v. Egidi
, 305 Ill. App. 3d 613, 623 (1999).  Nevertheless, it is not without its exceptions.  Our supreme court explained in 
Petersen v. Hubschman Construction Co.
, 76 Ill. 2d 31, 39 (1979):

"In Illinois, however, certain exceptions to the merger doctrine have been created.  Rea-soning that the merger doctrine evolved solely to protect the security of land titles, the Illinois courts have held that when the deed embraced and contained all of the subjects of the executory contract, the contract merged with the deed.  However, an executory agree-ment for the performance of separate and distinct provisions did not merge with the deed.  The prior contract is superseded only as to such of its provisions as are covered by the conveyance made pursuant to its terms."  
Petersen
, 76 Ill. 2d at 39.

Because executory agreements for the performance of separate and distinct contract provisions are not fulfilled by delivery of the deed, it is not merged into the deed and remains open for perfor-mance.  See 
Krajcir
, 305 Ill. App. 3d at 623.  These separate and distinct provisions have been described as "collateral to and independent of the provisions in the subsequent deed."  
Harris Trust & Savings Bank v. Chicago Title & Trust Co.
, 84 Ill. App. 3d 280, 284 (1980).

Recently, this court, in 
Neppl v. Murphy
, 316 Ill. App. 3d 581 (2000), addressed the applicability of the merger doctrine to representations in a real estate contract warranting that the heating system would be in operating condition at the time of closing.  The trial court granted defendant-seller's motion to dismiss plaintiff-buyer's breach of a sales contract action based on the merger doctrine.  Plaintiff-buyer appealed.  On appeal, this court recognized that the threshold issue in determining whether the merger doctrine applies in a given case is "whether the contractual provision at issue is collateral to and independent of the provisions in the subsequent deed."  
Neppl
, 316 Ill. App. 3d at 587.  The provision at issue in 
Neppl
 read:

"Seller warrants to Buyer that all fixtures, systems and personal property included in this Contract shall be in operating condition at possession ***."  
Neppl
, 316 Ill. App. 3d at 582.  

This court, relying on 
Lanterman v. Edwards
, 294 Ill. App. 3d 350 (1998), held that this provision was an express warranty of the quality of the heating system and, as such, did not merge into the deed.  
Neppl
, 316 Ill. App. 3d at 589.  The 
Neppl
 court recognized:

"Generally, warranties as to quality, in comparison with requirements of conveyancing, touch upon aspects other than the conveyance itself and are incidental to the main purpose of the deed, which is to transfer good title."  
Neppl
, 316 Ill. App. 3d at 587, citing 
Lanterman
, 294 Ill. App. 3d at 353. 

Thus, because delivery of the deed would not constitute performance of the provision, the court determined it was incidental to the main purpose of the contract, 
i.e.
, conveyance of real estate, and the doctrine of merger did not apply.  
Neppl
, 316 Ill. App. 3d at 589.  

Applying 
Neppl
 to the facts in the instant case leads to the conclusion that defendant's warranties as to the condition of the roof, foundation and septic system were collateral to the delivery of the deed and, thus, not affected by merger.  

In addition, courts have also noted that whether and to what extent the sales contract merges into the deed upon delivery to the buyer is also a matter of the parties' intent.  See, 
e.g.
, 
Daniels v. Anderson
, 162 Ill. 2d 47 (1994).  This intent is evidenced by the language of the instruments and the surrounding circumstances.  
Trapp v. Gordon
, 366 Ill. 102, 111 (1937).  Here, there is evidence the parties anticipated their agreements would survive the closing.  For example, at the closing, the defendant agreed to place $1,000 in escrow as a sign of good faith to repair or replace the septic tanks.  Certainly such an agreement made at closing presupposes that it necessarily must survive past the time of closing.

Accordingly, we hold that the merger doctrine does not bar plaintiffs' breach of contract action.  We also find that because there are genuine issues of fact concerning the extent of these warranties and obligations and whether the contract was breached, summary judgment was improperly granted as to count I.

C.  Failure to Disclose Material Defects

Plaintiffs next contend that the trial court erred in granting summary judgment on count II.  Plaintiffs assert that the merger doctrine is inapplicable to causes of action brought under the Disclosure Act and, in addition, that there are genuine issues of material fact which preclude summary judgment.

The purpose of the Disclosure Act is to provide prospective buyers with information about material defects known to the seller concerning the property.  See 765 ILCS 77/25, 35 (West 1998).  Under the Disclosure Act, the seller is required to complete and deliver the disclosure report to the prospective buyer before the signing of a written agreement that would require the buyer to accept a transfer of the property.  See 765 ILCS 77/20 (West 1998).  Section 55 provides that "[a] person who knowingly violates or fails to perform any duty prescribed by any provision of this Act or who discloses any information on the Residential Real Property Disclo-sure Report that he knows to be false shall be liable in the amount of actual damages and court costs, and the court may award reason-able attorney fees incurred by the prevailing party."  765 ILCS 77/55 (West 1998).  Section 25 provides, however, that the seller is not liable for any error, inaccuracy or omission made without the seller's knowledge, or where the error, inaccuracy or omission "was based on a reasonable belief that a material defect or other matter not disclosed had been corrected."  765 ILCS 77/25(a)(West 1998).  

We first address plaintiffs' contention that the merger doctrine does not apply to violations of the Disclosure Act.  The trial court's reasoning behind its grant of summary judgment to defendant on this count is not apparent from the face of the order.  The court simply stated as to both count I (breach of contract) and count II (violation of Disclosure Act) that "[o]n this record it is clear that the contract has merged into the deed exchanged for good and valuable consideration."  Thus, it appears that the court found the merger doctrine barred both counts, including the count alleging violations of the Disclosure Act.  This court's research, however, has not turned up a case which applied the merger doctrine as a bar to a claim under the Disclosure Act.  Moreover, the lan-guage of the Disclosure Act itself does not support such a conclusion.  Section 60 of the Disclosure Act provides:  "No action for violation of this Act may be commenced later than one year from the earlier of the date of possession, date of occupancy, or date of recording of an instrument of conveyance of the residential real property."  765 ILCS 77/60 (West 1998).  Application of the doctrine of merger would operate as a bar to all actions brought under the Disclosure Act after the conveyance of the property.  Such a result is certainly inconsistent with the express language of section 60 of the Disclosure Act.  Accordingly, we find that merger is not a bar to actions under the Disclosure Act.

Having disposed of the issue of merger, we now address whether there are genuine issues of material fact that preclude summary judgment on count II of the complaint, which alleges that defendant violated the Disclosure Act
 by failing to disclose material defects in the basement foundation, the septic system, and the roof.

In the case at bar, disclosure number four on the report given by defendant to plaintiffs reads:  "I am aware of material defects in the basement or foundation."  Defendant placed a check mark in the "no" column next to that statement.  Disclosure number five reads:  "I am aware of leaks or material defects in the roof, ceilings or chimney."  Defendant placed a check mark in the "no" column next to that statement.  Disclosure number 13 reads:  "I am aware of material defects in the septic, sanitary sewer or other disposal systems."  Again, defendant placed a check mark in the no column next to that statement.  Finally, disclosure number 20 reads: "I am aware of underground fuel storage tanks on the property."  Defendant placed a check mark in the "yes" column next to that statement and added the following:  "fuel tanks are being drained and chemically cleaned out and floor underneath tanks to be chemically cleaned."  

Plaintiffs contend that defendant knowingly violated the Disclosure Act because at her deposition she acknowledged that she was aware of septic defects, yet she failed to disclose them on the form.  In a addition, plaintiffs argue that it is a question of fact as to whether defendant was aware of defects in the roof and foundation and failed to disclose them.

In her motion for summary judgment, defendant made no specific argument directed at her alleged violation of the Disclosure Act.  Instead, she argued merger and also that plaintiffs had actual notice of all the material defects.  As already stated, merger does not bar plaintiffs' action under the Disclosure Act.  As to the issue of plaintiffs' alleged actual notice, we find that it does not support a finding of summary judgment in defendant's favor.  

The case of 
Woods v. Pence
, 303 Ill. App. 3d 573 (1999), is instructive on the issues before us.  In 
Woods
, plaintiff-buyers filed a complaint against defendant-sellers alleging that sellers violated the Disclosure Act by falsely representing that they were not aware of any leaks or material defects in the roof.  
Woods
, 303 Ill. App. 3d at 576.  The trial court granted summary judgment in favor of defendant-sellers.  On appeal, the Third District reversed.  The court found that summary judgment was improper because there were questions of fact as to whether sellers knew their statement was false.  
Woods
, 303 Ill. App. 3d at 576; see also 
Connor v. Merrill Lynch Realty, Inc.
, 220 Ill. App. 3d 522 (1991) (whether defendant's statement regarding flooding of basement was knowingly false was question of fact).  In addition, the court found that it was a question of fact whether defendant's good-faith belief that the defect had been corrected was reasonable.  
Woods
, 303 Ill. App. 3d at 577; see also 
Robinson v. Econ-O-Corporation, Inc.
, 62 Ill. App. 3d 958 (1978) (reasonable belief is a question of fact).  Here, there are many questions of fact remaining.  There are questions as to the existence of defects, defendant's alleged knowledge of defects, and any good-faith belief that defendant may have had regarding whether the alleged defects had been corrected.  Accordingly, we find that summary judgment is not appropriate.

Moreover, we reject defendant's inference that plaintiffs' actual notice of any alleged problems is a bar to their cause of action under the Disclosure Act.  In 
Woods
, the court specifically noted as follows in response to sellers' assertion in that case that buyers had notice of water damage to the residence:

"[T]he fact that plaintiffs were aware of water damage to the residence does not pre-clude liability.  While the disclosure report is not a substitute for inspections or warran-ties, buyers are entitled to rely on the truthfulness of the statements contained therein.  [Citation.]  A seller who knowingly makes a false statement is subject to liabil-ity under the Act; 
no exception is made because of a buyer's knowledge of the defect
.  [Citation.] We believe, however, that a buyer's knowledge of a defect may be relevant to the amount of damages awarded to a successful plaintiff.  Section 55 [of the Dis-closure Act] provides for an award of actual damages.  [Citation.]  Presumably, any defect of which the buyer was aware would be reflected, to a greater or lesser extent, in the purchase price of the house, thereby reducing those damages."  (Emphasis added.)  
Woods
, 303 Ill. App. 3d at 577.

Therefore, although the fact that plaintiffs herein conducted an inspection and were aware of at least the defects in the septic system, it is of no consequence to the viability of the cause of action.

Accordingly, we find that summary judgment on count II should be reversed.

D.  Negligence

Finally, plaintiffs contend that the trial court improperly granted summary judgment on their negligence claim.

Plaintiffs allege in count III of their complaint that after inspecting the premises, they notified defendant that the under-ground fuel tanks would have to be removed and the contaminated areas cleaned.  According to the complaint, defendant agreed to do so.  Also according to the complaint, defendant and E.R.I. General Contracting undertook to remove the tanks and clean the floor and that both did so negligently.  

In her motion for summary judgment, defendant alleged she was never involved in the removal of oil tanks from the premises.  However, this is contradicted by her response to the following allegation contained in response to plaintiffs' request to admit:

"Prior to the sale of the improved property located at 129 South Old Creek Road, Palos Park, Illinois, to Plaintiffs, Defendant Gustafson personally participated in the clean up of oil from the floor of the crawl space."

Defendant admitted the allegation.  Accordingly, we find that there are genuine issues of fact on plaintiffs' negligence action which preclude summary judgment.  

III. Conclusion

Based on the foregoing, we hereby reverse the trial court's grant of summary judgment as to counts I, II, and III.  The case is remanded for further proceedings.

Reversed and remanded.

Gallagher, P.J., and Campbell, P.J., concur.