#23919-aff in pt, rev in pt & rem-MILLER, Retired Justice

**2006 SD 110**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

IVAN R. FULLER,                                        Plaintiff and Appellant,

v.

JAMES CROSTON and PATRICIA
CROSTON, and COLDWELL
BANKER GKR & ASSOCIATES, by
and through JANEY JOHNSON,                    Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE STUART L. TIEDE
Judge

* * * *

PATRICK J. GLOVER of
Danforth & Meierhenry, LLP
Sioux Falls, South Dakota                       Attorneys for appellant.

STEPHEN C. LANDON
MICHAEL A. HENDERSON of
Cadwell, Sanford, Deibert & Garry, LLP
Sioux Falls, South Dakota                       Attorneys for appellees,
                                                Coldwell Banker GKR &
                                                Associates/Janey Johnson.

JOEL D. VOS
PATRICK L. SEALEY of
Heidman, Redmond, Fredregill,
Patterson, Plaza, Dykstra & Prahl, LLP
Sioux City, Iowa                                Attorneys for appellees,
                                                James & Patricia Croston.

* * * *

ARGUED OCTOBER 2, 2006

OPINION FILED **12/06/06**

#23919

MILLER, Retired Justice

[¶1.] This is an appeal from a summary judgment granted to sellers in an action by a home buyer alleging that sellers had not fully and adequately disclosed defects in the property as required by law. We affirm in part, reverse in part and remand.

## FACTS AND PROCEDURAL HISTORY

[¶2.] In the fall of 2002, Ivan R. Fuller began looking for a house to purchase in Sioux Falls. He hired real estate agent Margo Middlen to assist him. She showed Fuller a home owned by James and Patricia Croston. Crostons had been the sole owners of the house since its construction. Being interested in purchasing the home, Fuller received from Crostons a signed and completed seller's property disclosure statement required by SDCL 43-4-38.

[¶3.] The disclosure statement indicated that the home had not experienced any water penetration problems. However, when Crostons signed the disclosure statement in November 2002 they were aware of two to three occasions between 1969 and 1977 when water had seeped into the basement. They maintain that they did not include this information in the disclosure statement on the recommendation of their real estate agent, Janey Johnson,[1] who allegedly advised Crostons that if they believed the problem was fixed they did not have to disclose it. She denies these allegations. Crostons, believing that the water problems had been resolved, did not disclose the prior seepage on the disclosure statement. Their disclosure

---

1. Janey Johnson is a licensed real estate agent who works as an agent with Coldwell Banker GKR & Associates.

statement also indicated there were no cracks in the interior walls of the house. However, Crostons were aware of some cracks in the walls in the basement behind the washer and dryer. They puttied and painted over these cracks two to three years before selling the house to Fuller.

[¶4.]     Prior to executing the purchase agreement, Fuller visited the home in company with Crostons. He noticed some flaking on one of the basement walls. According to Fuller, "the painting was kind of rough and you could tell there had been some moisture on the cement block and the paint." When he asked about this, Crostons informed Fuller of a "little bit of water there sometime back." They told him that they had experienced some water in the basement on two to three occasions between 1969-77, but they had not experienced any additional water problems since adding a sunroom to the home in 1977. Fuller also noticed some "roughness of the paneling in the family room." Crostons explained that when they added a sunroom and a garage they had some water come into the basement. As a result, they did landscaping to seal off the water and also placed wood paneling over the drywall in the basement.

[¶5.]     On November 18, 2002, after the conversation with Crostons about water in the basement, Fuller still offered to purchase Crostons' home for $158,000. Crostons accepted this offer and a purchase agreement was finalized. The purchase agreement provided that Fuller would have ten days to complete a professional home inspection and notify Crostons of any unacceptable conditions discovered. Under the agreement, if Fuller did notify Crostons of any such concerns, the parties would have two days to negotiate a subsequent agreement concerning any issues

#23919

raised by the inspection.  If no such agreement could be reached, the purchase contract would terminate.

[¶6.]        Fuller hired David Kemper of Kemper Inspection Services to perform the inspection.  Kemper completed the inspection and issued a report on November 21, 2002.  Fuller read through the entire inspection report and noticed several areas of concern.  The Kemper report revealed that the garage roof was sagging and suggested adding a beam under the rafters.  The report also noted a small horizontal crack and minor bowing at the north and south foundation walls.  The report explained that the north wall had been patched and there was no new cracking.  According to the inspection report, this was not unusual and was of no structural significance at the time.  The inspection report further indicated some signs of past dampness in the basement which appeared to be old.

[¶7.]        On November 29, 2002, Fuller and Crostons executed an addendum to the purchase agreement designed to address the issues raised by the inspection.  In the signed addendum, Crostons specifically agreed "to jack and add support beam to garage roof before closing."  Fuller claims that the intention was to have the garage roof fixed.  The purchase agreement included an integration clause stating:

> This purchase agreement, any attached exhibits and any addenda or amendments signed by the parties, shall constitute the entire agreement between Purchaser(s) and Seller(s), and supersedes any other written or oral agreements between Purchaser(s) and Seller(s).  This Purchase Agreement can be modified only in writing signed by the Purchaser(s) and Seller(s).

The cracking and dampness issues raised by the inspection report were not addressed by the addendum, because Kemper felt these matters were not

significant. Pursuant to the addendum, Crostons hired Ron Lembcke to address the sagging of the garage roof. Lembcke jacked and added a support beam to the garage roof as recommended in the inspection report. After Lembcke completed the work, Fuller personally inspected the roof and confirmed that the sagging was eliminated. Fuller did not consult a professional inspector to ensure the garage was fixed properly.

[¶8.]        On January 17, 2003, the parties closed the sale on the home. Janey Johnson was present at the closing, but she made no representations to Fuller (then or any other time) concerning the condition of the home. By August 2003, Fuller was completely moved into the home. He did not notice anything that gave him cause for concern about the condition of the home until June 16, 2004. On that date, the total rainfall for Sioux Falls was approximately eight inches.[2] At some point during or immediately after this rainfall, Fuller noticed water entering his basement, but could not determine precisely where it was coming in. He stated that the water appeared to be "seeping in around the foundation and the walls." The water created "puddles here and there" until the carpet was largely saturated.

[¶9.]        Fuller contacted Roy Johnson, a contractor, to evaluate and remedy the water problem. When Johnson removed some of the paneling in the

---

2.    According to a FEMA Report, Sioux Falls accumulated a total of 12.74 inches of rain from May 17 to June 16 of 2004, a record amount for a 31-day period. An Associated Press release published at the time described the resulting flooding as the worst Sioux Falls had experienced in years, causing approximately $500,000 worth of damage to the city's public infrastructure. According to the release, approximately 200 of the City's residents were displaced from their homes

basement, the "stuff behind the paneling crumbled" in his hands. Johnson advised Fuller that it appeared there had been previous water penetration in the home. He blamed the water infiltration on the existence of cracks in the home's foundation and bowing of the walls. He also told Fuller that there had been major water damage in the past and that frequent water problems would persist unless action was taken. Johnson then installed drain tile around the perimeter of the basement, a sump pump and reinforced the foundation walls. Fuller also purchased and installed new padding and carpet for the basement.

[¶10.]     At about the same time Fuller encountered the water issues, he noticed the garage roof was sagging once again. He contacted Duane Boice, an engineer, to evaluate the roof. Boice advised Fuller that installation of the support beam actually weakened the roof and made it worse. Boice explained that the roof would have to be fixed, or it would collapse. Fuller then hired Able Construction to repair the roof.

[¶11.]     It is undisputed that prior to the purchase, based on Crostons' oral disclosures, Fuller knew about the flaking paint and some prior water penetration problems in the basement. He was also aware of minor bowing and a small horizontal crack on the north and south wall, including the small crack behind the washer and dryer that had been puttied over. These were discovered through Kemper's inspection prior to closing. Only after the heavy rain did Fuller learn of damage behind the paneling on all four walls in the basement and rust at the bottom of the support posts. Crostons contend that they were unaware of the damage behind the paneling on the basement walls, and that Fuller was aware of

all the other issues before the sale. Fuller asserts he was not made aware of the extent of the previous water damage or all of the cracks in the basement walls. He also claims Crostons were aware of damage behind the paneling.

[¶12.]     On April 29, 2005, Fuller filed a complaint against Crostons, Janey Johnson and Coldwell Banker GKR & Associates (collectively defendants). He alleged that Crostons failed to properly disclose prior water penetration in the basement, failed to disclose cracks in some of the walls, and breached an addendum to the purchase agreement relating to the garage roof.

[¶13.]     The circuit court entered summary judgment in favor of defendants, determining that Fuller "knew there had been prior water damage and he knew there had been cracking. He knew there had been puttying of cracks and he knew that the paneling on the one wall had a bulge in it because he specifically noticed that." The court found "sufficient disclosure of the problems that had occurred in the house so that Fuller was aware of what the potential problems were."

[¶14.]     Fuller appeals to this Court, raising three issues:

1.     Whether the circuit court erred in concluding that there was no genuine issue of material fact concerning whether Crostons' disclosure complied with the statutory requirements of SDCL chapter 43-4.

2.     Whether the circuit court erred in concluding that there was no genuine issue of material fact concerning breach of the purchase agreement addendum relating to the garage roof.

3.     Whether the circuit court erred in concluding that there was no genuine issue of material fact concerning whether Janey Johnson of Coldwell Banker GKR & Associates is liable for misrepresentation and/or nondisclosure.

## STANDARD OF REVIEW

[¶15.]     Our review of a circuit court's decision on summary judgment is well settled:

> Summary judgment is authorized if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided.  All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party.  The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law.  Summary judgment will be affirmed if there exists *any* basis which would support the trial court's ruling.

Schwaiger v. Avera Queen of Peace Health Services, 2006 SD 44, ¶7, 714 NW2d 874, 877 (citations omitted) (emphasis in original).

## ANALYSIS AND DECISION

[¶16.]     **1.     Whether the circuit court erred in concluding that there was no genuine issue of material fact concerning whether the Crostons' disclosure complied with the statutory requirements of SDCL chapter 43-4.**

*Good Faith Disclosure*

[¶17.]     Fuller claims genuine issues of material fact exist as to whether a full and complete disclosure of defects was made.  He contends he was not made aware of the extent of water damage or cracks in the basement either orally or otherwise.  He also maintains that Crostons' oral disclosures did not comply with or satisfy the mandates of South Dakota's disclosure laws.

[¶18.] "A seller of residential property is required to complete a copy of the statutory disclosure statement." Parmely v. Hildebrand (*Parmely II*), 2001 SD 83, ¶8, 630 NW2d 509, 512 (citing SDCL 43-4-38). Pursuant to SDCL 43-4-38, "[t]he seller of residential real property shall furnish to a buyer a completed copy of the disclosure statement before the buyer makes a written offer." Also, a mandatory disclosure form is provided for sellers in SDCL 43-4-44. Engelhart v. Kramer, 1997 SD 124, ¶10, 570 NW2d 550, 552. "The statutes require a *complete and truthful* disclosure made in good faith, not a disclosure simply sufficient to put the buyer on notice of the defects." Parmely v. Hildebrand (*Parmely I*), 1999 SD 157, ¶9, 603 NW2d 713, 717 (emphasis in original). Further, "as per SDCL §[§] 43-4-41 and 43-4-44, a seller's 'good faith' is determined under a reasonable person standard." *Engelhart*, 1997 SD 124, ¶20, 570 NW2d at 555.

[¶19.] Crostons admit they had knowledge of previous water damage and a crack in the basement at the time they signed the disclosure statement, and that they did not reveal this knowledge on the disclosure statement. They contend that disclosure of these defects was not necessary. First, they claim their real estate agent (Janey Johnson) advised them not to disclose the prior water penetration because the problems occurred so long ago and were believed to have been fixed. However, the disclosure form mandated by statute simply asks, "have you experienced any water penetration problems in the walls, windows, doors, basement, or crawl space?" Crostons checked "no" to this question. By its plain terms, the question does not ask only for ongoing water penetration problems. Indeed, it is silent as to whether the problems have been fixed or persist. The

disclosure statement simply asks if the sellers "experienced" water penetration problems. Crostons own admissions reveal they had.

[¶20.]    Second, Crostons contend that disclosure of the crack was not necessary because it appeared insignificant to them. They also claim that their understanding of the question related only to cracks in the sidewalk and driveway. Again, the disclosure form provided in SDCL 44-3-44 asks, "are there any interior cracked walls or floors, or cracks or defects in exterior driveways, sidewalks, patios, or other hard surface areas." The disclosure question does not qualify the cracks in any manner, and it does not ask for significant cracks only. Rather, it asks for cracks in the walls and floors as well as those in the sidewalk and driveway.[3] Based on these facts, viewed in a light most favorable to Fuller, it does not appear Crostons completed the disclosure statement truthfully, completely, and in good faith as required by South Dakota's disclosure laws. At the very least, there is a genuine issue of material fact whether they did so.

*Oral Disclosures*

[¶21.]    Despite the absence of completeness and candor in the disclosure statement, Crostons contend that they nevertheless fulfilled the disclosure requirements of SDCL chapter 43-4. They claim that their oral disclosures to Fuller of prior water penetration alleviated any earlier misrepresentation or omission in the disclosure statement. Whether an oral disclosure is sufficient to fulfill South Dakota's disclosure requirements is a matter of first impression.

---

3.    Crostons do not allege they discussed this issue with their real estate agent.

[¶22.] Again, SDCL 43-4-44 provides a mandatory written form that "shall be used for the property condition disclosure statement." Also, SDCL 43-4-38 requires written amendments to the property condition disclosure statement. That statute provides in relevant part:

> If after delivering the disclosure statement to the buyer or the buyer's agent and prior to the date of closing for the property or the date of possession of the property, whichever comes first, the seller becomes aware of any change of material fact which would affect the disclosure statement, the seller shall furnish a written amendment disclosing the change of material fact.

SDCL 43-4-38. The statutes are otherwise silent as to the issue of oral or written disclosures. This Court has held that "[s]tatutory disclosure statements essentially create a contract between the parties to a land sale." *Parmely II*, 2001 SD 83, ¶6, 630 NW2d at 512 (citing Mahan v. Avera St. Luke's, 2001 SD 9, ¶15, 621 NW2d 150, 154). Fuller argues that this contract must be in writing, and that any modifications to the written contract must also be in writing.

[¶23.] The Court must look to the purpose of South Dakota's disclosure laws in considering this issue. One obvious purpose of the disclosure statutes is "to provide prospective buyers with information about material defects known to the seller concerning the property." Coughlin v. Gustafson, 772 NE2d 864, 869 (IllAppCt 2002) (citation omitted). Another purpose, however, would be "to get sellers to give buyers the written disclosure statement." Bohm v. DMA Partnership, 607 NW2d 212, 219 (NebAppCt 2000). In *Lucero v. Van Wie*, this Court held "'the purpose of the statute is to facilitate private transactions rather than impose regulations for the general public benefit.'" 1999 SD 109, ¶14, 598 NW2d 893, 897

(quoting Loughrin v. Superior Court, 15 CalApp4th 1188, 1194, 19 CalRptr2d 161, 164 (1993)).

[¶24.]    The allowance of oral disclosures would defeat the purpose and clear language of the statute requiring written amendments as well as the statute providing the mandatory form.  Were we to conclude that oral disclosures were sufficient to satisfy the disclosure statutes, these statutes would effectively be rendered moot.  We are not willing to do so.  That is the prerogative of the Legislature.

*Reliance/Causation*

[¶25.]    Crostons contend Fuller's knowledge of previous water damage, cracking and roughness in the paneling, which was based on oral disclosures, inspections and observations, defeats their liability.  They claim Fuller's knowledge of the defects demonstrates a lack of reliance on the incorrect disclosure statement, and without reliance, the violation of the disclosure statute was not the cause of Fuller's damages.  Whether a lack of reliance on the disclosure statement can defeat a seller's liability is also a matter of first impression in South Dakota.

[¶26.]    SDCL 43-4-42 provides in pertinent part, "a person who intentionally or who negligently violates §§ 43-4-37 to 43-4-44, inclusive, is liable to the buyer for the amount of the actual damages and repairs suffered by the buyer *as a result of* the violation or failure." (emphasis added).  This language seems to imply that reliance and causation are necessary elements for a cause of action based on a failure to comply with the disclosure statement requirements.

[¶27.] Several surrounding jurisdictions have discussed whether reliance on the property condition disclosure statement is necessary to create liability. For instance, an Illinois court held, "[a] seller who knowingly makes a false statement is subject to liability under the Act; no exception is made because of a buyer's knowledge of the defect." *Woods v. Pence*, 708 NE2d 563, 565 (IllAppCt 1999) (citing 765 ILCS 77/25 (West 1996)). The *Woods* court did provide, however, that a buyer's knowledge was relevant to the amount of damages awarded because any defect of which the buyer was aware would be reflected in the purchase price of the house, thereby reducing those damages. *Id*. Another Illinois court "reject[ed] defendant's inference that plaintiffs' actual notice of any alleged problems is a bar to their cause of action under the Disclosure Act." *Coughlin*, 772 NE2d at 871. The *Coughlin* court found the plaintiff's alleged actual notice did not support a finding of summary judgment in defendant's favor. *Id*.

[¶28.] Furthermore, a Nebraska court agreed with the *Woods* analysis and held "the buyer's knowledge of undisclosed damage in a cause of action for failure to provide a disclosure statement is relevant on the extent of damages, but does not provide a total defense." *Bohm*, 607 NW2d at 219 (*see also* Burgess v. Miller, 621 NW2d 828, 834-35 (NebAppCt 2001)). That court reasoned this was "logical and consistent with the obvious purpose of [the] statute, which at its core is to get sellers to give buyers the written disclosure statement." *Id*. Nebraska's disclosure statute allows for recovery of actual damages, which the buyer has sustained *as a result* of the violation of the statute. *Id*. (citing NebRevSt 76-2,120(11)) (emphasis added).

[¶29.]     It should be noted that the authority provided by Crostons, which requires reliance on the disclosure statement before liability may be imposed, is based upon fraud and deceit causes of action. This authority is unpersuasive because fraud and deceit require justifiable reliance on the representation as a necessary element. Brandriet v. Northwest Bank South Dakota, N.A. 499 NW2d 613, 616 (SD 1993) (citations omitted). South Dakota's disclosure statutes do not explicitly do so. Fuller is not appealing the summary judgment disposition of his fraud and fraudulent concealment claims. He is appealing the disposition of his claim under SDCL chapter 43-4. The claims have different elements. *See* Jensen v. Sattler, 696 NW2d 582, 588 (Iowa 2005) (holding proof of fraud is not required for buyer to recover under Iowa Real Estate Disclosure Act) (citations omitted).

[¶30.]     In this case, Fuller's knowledge is based upon oral disclosures from Crostons and an inspection he hired conducted. By requiring reliance on the disclosure statement, this Court would allow sellers to misrepresent defects in the disclosure statement and cover themselves later by making oral disclosures. Also, this Court would effectively penalize the prudent buyer who conducts an independent inspection and investigation. Anything the buyer learned or was put on notice of would defeat a cause of action for a disclosure-statement violation by the seller. A seller could simply claim the buyer relied on the inspection and investigation instead of the disclosure statement. The legislative intent of protecting consumers would not be upheld if the statutes were construed in such a manner.

[¶31.] Therefore, this Court agrees that a buyer's knowledge of undisclosed damage in a cause of action for violation of the disclosure statutes does not provide a complete defense. However, the buyer's knowledge may be relevant to the amount of damages awarded because any defect of which the buyer was aware would be reflected in the purchase price of the house, thereby reducing damages. This raises a genuine issue of material fact concerning the extent of damages resulting from the violation of the disclosure statutes. Thus, the circuit court's summary judgment disposition of this claim is reversed and remanded.

[¶32.] This conclusion, however, should not imply that strict liability results from a seller's nondisclosure under SDCL 43-4-38. *Engelhart*, 1997 SD 124, ¶18, 570 NW2d at 554. Strict liability is not the requisite standard under South Dakota's disclosure statutes, because liability attaches only if the nondisclosure is negligent or intentional. *Id.* Therefore, a mere nondisclosure without some form of culpability will not result in liability. We hold that a buyer's knowledge does not affect liability and is not a complete bar to the cause of action. However, according to SDCL 43-4-42, a buyer's knowledge is relevant to the extent of damages because recoverable damages are only those suffered "as a result of" the nondisclosure. Damages, therefore, may still be affected by the buyer's knowledge. Unlike damages, however, liability is not limited by the "as a result of the violation or failure" language, so it cannot be completely defeated by a buyer's knowledge. Instead, liability is a result of the intentional or negligent nondisclosure.

[¶33.] **2. Whether the circuit court erred in concluding that there was no genuine issue of material fact concerning breach of the purchase agreement addendum relating to the garage roof.**

-14-

[¶34.] Initially, it should be noted that, unlike the alleged water penetration and cracking defects, the issues concerning the garage roof do not relate to nondisclosure. Rather, this claim is based on a breach of contract. Fuller alleges the purchase agreement addendum required Crostons to "fix" the garage roof. Crostons contend that the addendum explicitly stated what was required of them— to jack and add a support beam to the garage roof before closing. The addendum provides, "sellers agree to jack and add support beam to garage roof before closing."

[¶35.] "Contract interpretation is a question of law reviewable de novo." Ziegler Furniture and Funeral Home, Inc. v. Cicmanec, 2006 SD 6, ¶14, 709 NW2d 350, 354 (citation omitted). "'When the meaning of contractual language is plain and unambiguous, construction is not necessary. If a contract is found to be ambiguous the rules of construction apply.'" Id. (quoting Pesicka v. Pesicka, 2000 SD 137, ¶6, 618 NW2d 725, 726 (citation omitted)). "'A contract is ambiguous when application of rules of interpretation leave a genuine uncertainty as to which of two or more meanings is correct.'" Id. ¶16, 709 NW2d at 355 (quoting Alverson v. Northwestern Nat'l Cas. Co., 1997 SD 9, ¶8, 559 NW2d 234, 235 (citations omitted)). Further,

> [a] contract is not rendered ambiguous simply because the parties do not agree on its proper construction or their intent upon executing the contract. Rather, a contract is ambiguous only when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.

Id. (citations omitted). "This Court need only look to the language that the parties used in the contract to determine their intention." Id. (citation omitted). "'If that

intention is clearly manifested by the language of the agreement, it is the duty of this Court to declare and enforce it.'" *Id*. (quoting *In re* Estate of Stevenson, 2000 SD 24, ¶14, 605 NW2d 818, 821 (citations omitted)).

[¶36.]     In this case, when viewed objectively, the language used in the purchase agreement addendum is clear and capable of only one meaning, i.e. Crostons were to jack and add a support beam to the garage roof before closing. Fuller and Crostons executed this addendum after the inspection revealed the sagging roof. The inspection report recommended adding a support beam to fix the problem. Crostons fulfilled this recommendation, and Fuller was satisfied upon completion of the work. Thus, we affirm the circuit court's decision that Fuller raised no genuine issue of material fact on the issue of whether Crostons breached the purchase agreement addendum.

[¶37.]     **3.     Whether the circuit court erred in concluding that there was no genuine issue of material fact concerning whether Janey Johnson of Coldwell Banker GKR & Associates is liable for misrepresentation and/or nondisclosure.**

[¶38.]     Fuller contends there are genuine issues of material fact concerning Johnson's and her employer's liability for misrepresentation and/or nondisclosure. SDCL chapter 36-21A provides rules and regulations for real estate licensing. A section of this chapter states in part, "no licensee is liable for a misrepresentation of the licensee's client arising out of the agency agreement unless the licensee knew of the misrepresentation." SDCL 36-21A-148. A licensee is defined as "any person holding a license issued pursuant to this chapter." SDCL 36-21A-1(12). A client is defined as, "any person, including a seller/landlord or a buyer/tenant, who has

entered into an agency relationship with a real estate licensee." SDCL 36-21A-1(6). In this case, Johnson is a licensed real estate agent and admits to representing Crostons in the sale of their home.

[¶39.]     Taking the evidence in the light most favorable to Fuller, Crostons assert Johnson told them not to disclose the prior water damage to the home on the disclosure statement. And, as stated earlier, Johnson denies that assertion. Crostons claim she advised them not to disclose because they told her the damage occurred many years ago and was fixed. Johnson, therefore, allegedly was aware of prior water penetration in the home. If that is true, she not only failed to prevent Crostons' nondisclosure, but actually encouraged it. This observation, however, does not end our inquiry. According to SDCL 36-21A-148, a licensee is liable for misrepresentations of the client if the licensee had knowledge of the misrepresentation. Therefore, before Johnson could be held liable, the Court must determine whether the nondisclosure of prior water damage was a misrepresentation by Crostons.

[¶40.]     "Misrepresentations" is not defined by SDCL chapter 36-21A. Fuller offers Black's Law Dictionary definition:

> Any manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts. An untrue statement of fact. An incorrect or false representation. That which, if accepted, leads the mind to an apprehension of a condition other and different from that which exists.

(6thed 1990). The crux of this issue is whether reliance is an element of misrepresentations as used in SDCL 36-21A-148. If so, Fuller's failure to rely on the misrepresentation of no prior water damage in the disclosure statement defeats

-17-

his claim against Johnson. Johnson attempts to equate misrepresentation as used in SDCL 36-21A-148 with the elements for a cause of action for deceit or negligent or intentional misrepresentation. However, this is not how the term is used in the statute. This Court has determined that a misrepresentation is "essentially a false statement of material fact." *In re* Discipline of Dorothy, 2000 SD 23, ¶66, 605 NW2d 493, 513 (citation omitted). Thus, reliance on the disclosure statement is not necessary for Johnson to be held liable for Crostons' false statement of no prior water damage. Therefore, we reverse the circuit court's summary judgment disposition of Fuller's claim against Johnson and Coldwell Banker, as a genuine issue of material fact remains concerning Johnson's knowledge of the claimed misrepresentation.[4]

[¶41.] Lastly, Fuller's request for appellate attorney fees is denied. "[A]ttorney fees are allowed when there is a contractual agreement that the prevailing party is entitled to attorney fees or there is statutory authority authorizing an award of attorney fees." Credit Collection Services, Inc. v. Pesicka, 2006 SD 81, ¶6, 721 NW2d 474, 476 (citations and emphasis omitted). There is

---

4. Fuller also relies on SDCL 36-21A-134 to hold Johnson liable for nondisclosure. However, Fuller does not fit the definition of customer provided by SDCL chapter 36-21A, so this statute is not applicable.

neither statutory authority[5] nor a contractual agreement in this case. Thus, attorney fees are denied.

[¶42.]     Affirmed in part, reversed in part, and remanded.

[¶43.]     GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and ZINTER, Justices, concur.

[¶44.]     MILLER, Retired Justice, sitting for MEIERHENRY, Justice, disqualified.

---

5.     According to SDCL 15-17-38, the only attorney fees allowed by statute are divorce, annulment of marriage, determination of paternity, separate maintenance, support or alimony.