Filed 2/4/26  Hwang v. Hotaki CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| OLIVIA HWANG et al., <br><br>     Plaintiffs and Appellants, <br><br> v. <br><br> CHRIS HOTAKI et al., <br><br>     Defendants and Respondents. | A173438 <br><br> (Alameda County <br> Super. Ct. No. 22CV022586) |

Plaintiffs Olivia Hwang and John Su appeal from an order granting summary judgment in favor of defendants in this dispute about a real estate purchase.  We affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

Defendant Sylvan Investments, Inc. (Sylvan) buys, renovates, and resells residential properties.  The company is owned and managed by defendant Basil Yaqub.[1]  In 2018, Sylvan purchased two adjoining properties in Hayward, and Yaqub had a fence installed down the middle of a driveway

---

[1] Plaintiffs allege that defendant Chris Hotaki, who has no ownership interest in Sylvan, "was Mr. Yaqub's business partner in the transaction at issue."

that was between the two properties. Yaqub attested that the fence was installed because it "optimized the privacy of the [p]roperties and also allowed both [p]roperties to use the driveway in an equal fashion." He further attested that he did not know the location of the property line or if the fence's "position was commensurate with the true boundary line between the [p]roperties." No evidence was presented that Yaqub knew or might have known the location of the property line.

Hwang and Su later purchased one of the two properties from Sylvan. Yaqub, who is also a real estate agent, was the agent for Sylvan, and Hwang and Su were represented by their own agent.

The written information Hwang and Su received about the property at the time of the purchase was extensive and is undisputed, with much of this information being in the form of general advisories as opposed to seller disclosures.[2] In the seller's disclosures Hwang and Su were told, "Fence built in the middle of the driveway. Shared between both homes." On a different disclosure form, Yaqub circled the word "fence" when indicating that he was aware of "[f]eatures of the property shared in common with adjoining landowners . . . whose use or responsibility for maintenance may have an effect on the subject property." This form also stated that the property was being sold "as is."

In other materials, Hwang and Su were advised and informed that "[f]ences . . . may not represent the actual boundary lines," that the sellers "do not provide any guarantee or warranties," and that the sellers are "not responsible for identifying the location of boundary lines or other items

---

[2] According to Hwang and Su, "[a]dvisories are general warnings or recommendations that appear throughout standard disclosure forms; they are not factual representations about th[e] specific issue [regarding the fence]."

2

affecting title." A buyers' inspection advisory stated that the buyers were "STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY," including "lot size, age of improvements and boundaries." It advised the buyers "that only an appraiser or land surveyor . . . can reliably confirm square footage, lot size, [p]roperty corners and exact boundaries of the [p]roperty." And it cautioned that property boundaries can only be determined by an appraiser or surveyor, that fences "may not represent actual boundary lines," that the real estate brokers had not verified any boundary lines, and that the buyers should hire their own appraiser or surveyor if they wanted information about the property's boundaries.

Finally, Hwang and Su's offer to purchase the property included a signed copy of the buyers' inspection advisory in which they acknowledged they were informed that "[f]ences . . . and other barriers or markers do not necessarily identify true [p]roperty boundaries" and were "STRONGLY ADVISED" to investigate the condition and suitability of the property, including its "lot size . . . and boundaries."

After purchasing the property, Hwang and Su discovered that the fence encroached into *their* lot. Relying on a survey company's report, their complaint alleged that the company "confirmed that the fence sits 6.2 – 7.3 feet *into* [Hwang and Su's] property (it is not straight) and the fence runs approximately 143 feet long, depriving us of approximately 1,140 square feet of our land." (Italics added.) In other words, if Hwang and Su thought the fence marked the property's boundary when they purchased the property, the survey showed that they received more—not less—property on that side of their house than they had thought. Nonetheless, Hwang and Su complain that the "placement of the fence . . . obstruct[s their] access to the property they

3

purchased and paid for and provides no convenience to them." In their appellate briefing, defendants argue that for Hwang and Su "[t]o make full use of their property [they] simply need[] to move their fence to the actual property line." Apparently, Hwang and Su tried to do just that at one point, but new owners of the adjoining property "threatened to call the police."

## II.
### DISCUSSION

Summary judgment is warranted if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)[3] A party moving for summary judgment may meet its initial burden of production by showing "one or more elements of the cause of action . . . cannot be established"; the burden then shifts to the other party to show a triable issue of material fact exists. (§ 437c, subd. (p)(2); see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 (*Aguilar*).) We consider all evidence in the light most favorable to the nonmoving party. (*Id.* at p. 843.)

As a court of review, we " 'independently review the parties' papers supporting and opposing [a motion for summary judgment], using the same method of analysis as the trial court. Essentially, we assume the role of the trial court and apply the same rules and standards.' " (*Apex Solutions, Inc. v. Falls Lake National Ins. Co.* (2024) 100 Cal.App.5th 1249, 1256.) The burden of demonstrating error on appeal, however, remains on the objecting party. (See *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 708 [judgment is presumed correct even on de novo review of a summary

---

[3] All further statutory citations are to the Code of Civil Procedure unless otherwise specified.

4

judgment].) As a result of this burden, the appellant must identify a triable issue by citing "*evidence* in the record." (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 178, fn. 4.)

The parties here largely agree on the governing law. " ' "[T]he elements of a cause of action for fraud based on concealment are: ' "(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." ' " ' " (*RSB Vineyards, LLC v. Orsi* (2017) 15 Cal.App.5th 1089, 1096–1097.) " 'A real estate seller has both a common law and statutory duty of disclosure. . . . "In the context of a real estate transaction, 'it is now settled in California that where the seller knows of facts materially affecting the value or desirability of the property . . . and also knows that such facts are not known to, or within the reach of the diligent attention and observation of the buyer, the seller is under a duty to disclose them to the buyer.' " ' " (*Id.* at p. 1097; see also Civ. Code § 1102 et seq.) "The obligation to disclose, however, only [arises] if defendants [have] actual or constructive knowledge of the deficiencies." (*RSB Vineyards*, at p. 1097.)

The parties also agree that "pre-printed disclosures" are legally inadequate to relieve sellers of their duty to disclose known material facts, and they agree that a pre-printed "as is" sale clause does not immunize sellers if there was a misrepresentation. (See, e.g., Civ. Code § 1668; *Manderville v. PCG&S Group, Inc.* (2007) 146 Cal.App.4th 1486, 1500;

5

*Loughrin v. Superior Court* (1993) 15 Cal.App.4th 1188, 1195.) Lastly, they agree that Yaqub, as both the seller and the seller's real estate agent, had a "dual duty" to disclose material facts. (See *Holmes v. Summer* (2010) 188 Cal.App.4th 1510, 1519.)

Hwang and Su's contentions about the specific nature of the information that Yaqub allegedly concealed evolved during this litigation. But in their reply brief in this court they clarify that their complaint is that Yaqub "<u>did not tell [them] that the boundary had not been verified</u>." Thus, while they accept that no evidence shows that Yaqub actually knew the location of the property line or had a duty to disclose it, they argue that he nonetheless should have told them he had not checked whether the fence aligned with the property line. According to them, Yaqub therefore "did not disclose enough facts to put a buyer on alert of what he did."

Appellants argue at length that Yaqub's legal arguments attempt to "collapse the seller's affirmative duty to disclose material facts into the buyer's duty to investigate." They maintain that even if they inadequately investigated the property's boundary line, any such failure did not absolve Yaqub of his duty to disclose that he "did not know whether the fence was put on the property line." As part of their argument, they contend that reliance on "boilerplate forms" to excuse concealment would be contrary to public policy We are not persuaded.

While we agree with Hwang and Su that a seller's duty to disclose is not necessarily affected by a buyer's failure to investigate, their claim for fraudulent concealment nonetheless fails under the undisputed facts of this case. These facts reveal that Hwang and Su *were* informed—if not specifically, then certainly functionally—that Yaqub had not checked whether the fence aligned with the property line. Whether in the form of

6

specific seller disclosures or general advisories, the materials Hwang and Su received unequivocally relayed to them that the seller did not know the location of the boundary line and was making no warranties about it.[4]  Again, the materials made clear that "[f]ences . . . and other barriers or markers do not necessarily identify true [p]roperty boundaries," and that "only an appraiser or land surveyor . . .  can reliably confirm . . . exact boundaries of the [p]roperty."  Having been given this information, Hwang and Su simply could not have reasonably believed Yaqub *had* checked the fence's alignment with the property line, and they therefore could not have reasonably relied on any assumption he had.  Stated another way, because Hwang and Su could not have reasonably believed Yaqub checked the property line, they cannot insist that his failure to disclose what they plainly should have understood amounted to a fraudulent concealment.  We simply cannot agree with Hwang and Su's insistence that Yaqub's "disclosures [were] misleading, as they create[d] a false impression that the fence's placement was proper or at least verified."

In reaching our conclusion, we necessarily reject many of Hwang and Su's ancillary contentions.  For example, they contend that the trial court's ruling was improperly based on the theory that they failed to investigate and verify the property line.  But we do not rely on such a theory.  They also contend that the trial court's ruling "improperly relied on the 'as-is' provision."  But we do not rely on this provision either.

Defendants sustained their burden of establishing that some of the elements of a claim for fraudulent concealment cannot be satisfied because

---

[4] We reject Hwang and Su's suggestion that considering the content of pre-printed advisories is irrelevant in evaluating whether a cause of action for fraudulent concealment has been established.

7

Yaqub did not conceal the fact that he had not checked the location of the property line, and because Hwang and Su cannot reasonably claim that they were misled by the materials they were given.  They have not satisfied their burden to show that there is a triable issue of material fact on these points. (§ 437c, subd. (p)(2).)

### III.
### DISPOSITION

The judgment entered following the grant of summary judgment in the defendants' favor is affirmed.

_____
Humes, P. J.

We concur:


_____
Banke, J.



_____
Langhorne Wilson, J.




*Hwang et al. v. Hotaki et al.*  A173438

9